DEERE, WELLS & CO. v. JOHN S. MORGAN, Sheriff, *et al.*, Appellants.

**Rescission:** FRAUDULENT PURCHASE. Where an insolvent firm executed mortgages covering its entire stock to a bank, which mortgages were not recorded, and subsequently purchased goods of plaintiff, and before the delivery thereof agreed with the bank that it should collect all accounts of the firm, and apply the proceeds on the mortgages, the sellers were entitled to rescind the sale, on the ground that the purchase was with the fraudulent purpose of not paying for the goods.

ELECTION OF REMEDIES. An insolvent firm executed mortgages covering its entire property to a bank, which were not recorded. Subsequently the firm purchased goods of plaintiff, and shortly afterwards the mortgages were filed. Plaintiff then commenced suit for the price, but afterwards, on ascertaining that the debtors had been insolvent at the time the goods were purchased, and that the mortgages had been withheld from record, commenced replevin. *Held*, that the facts establishing the fraudulent character of the purchase not having been known to plaintiff when it commenced suit, it was not, by the commencement of such suit, prevented from electing to rescind the sale.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

MONDAY, MAY 27, 1901.

ACTION in replevin. On April 7, 1898, Grantz & Gloe contracted with plaintiff for 12 Moline wagons, 6 boxes, and 2 top boxes, at the agreed price of $706, to be paid for in 6, 8, and 10 months, and these were delivered at Walnut, Iowa, July 18th of the same year. The firm had executed a chattel mortgage, securing payment of $1,775, covering its stock in trade at Walnut, Iowa,

January 3d previous, to the German Bank of that place, and on the same day a similar mortgage, securing payment of an equal amount, to the same party, on like property, at Manning, where it also carried on an agricultural implement business. May 6th of that year it agreed with the bank that the latter should hold as collateral security and collect all notes and accounts of the firm, and receive all receipts of sales of stocks, and apply all proceeds, less payment for help and Grantz's necessary expenses, on the indebtedness of the bank, which was done, and on the twenty-first of May another mortgage executed in pursuance of such agreement, covering all firm property. All these mortgages were, by mutual understanding, withheld from the records until August 9th, when Grantz died. The following day plaintiff began suit for the purchase price, aided by writ of attachment, which was levied on the wagons and boxes previously taken under other writs. An action in replevin against the sheriff, holding the property by virtue of the levy of other writs of attachment, was subsequently begun, and the property taken thereunder August 20, 1898. Thereafter, September 7th, the count of plaintiff's petition making claim for the purchase price of the wagons was withdrawn. On the petition of the Deering Harvester Company, Grantz & Gloe and J. F. Gloe were adjudged bankrupts, November 29, 1898, and Havestock duly appointed trustee for their estate. He and the sheriff answer, deny the right to rescind the contract of sale, and aver that the right, if it existed, had been waived. Trial to court, and judgment for the plaintiff, from which the defendants appeal.—*Affirmed.*

*Flickinger Bros.* for appellants:

*Harl & McCabe* and *Benjamin & Preston* for appellee.

LADD, J.—The mere insolvency of a purchaser is not alone ground for the rescission of a sale. A person in that situation may expect to, and often does, meet his obliga-

tions. But, if at that time he has so arranged his business as that he can have no reasonable expectation of paying for the goods bought, then the fair inference is that the purchase is with intention not to pay, and this amount to fraud justifying rescission. It was stipulated that Grantz & Gloe, dealers in agricultural implements at Walnut and Manning, were insolvent from and after April 1, 1898. The wagons and boxes in controversy were ordered from plaintiff April 7th for future delivery, but not shipped until July 18th of the same year. On January 3, 1898, that firm had executed a chattel mortgage to the German Bank of Walnut, covering its entire stock in trade then at Walnut, or subsequently to be acquired, to secure the payment of $1,775, and on the same day a like mortgage on its property at Manning securing a similar indebtedness. These mortgages were, through a mutual understanding, withheld from record until August 9, 1898, when plaintiff first learned of their execution. The existence of the mortgages, covering its entire stock in trade, in connection with the understanding not to record, disposes of the appellants' contention that the members of the firm had no knowledge of its insolvency. Indeed, as they were in personal control of the business, it is not perceived how the members of the co-partnership could be unable to meet its obligations in the ordinary course of trade, and they remain ignorant of that fact. As said, these mortgages covered, not only their entire stock, but all that might be subsequently acquired; so that when the purchase was made the firm knew, not only of its insolvency, but that by this incumbrance it had been deprived of its ability to pay out of the proceeds of the property bought or any other. In addition to this, it appears that one of the purposes in giving the mortgages, together with another subsequently executed, was to have the bank's aid "to clean up the business at Walnut." As insisted, this was in order to pay its debts, but, unfortunately for other creditors, those due this bank only.

Moreover, the evident motive in concealing their existence by not recording was the fear of being unable to buy on credit because of the well-founded apprehension that persons in such a situation would be unlikely to meet their obligations. These circumstances, in connection with the admitted fact of insolvency, justify the court's conclusion that the purchase was with the fraudulent purpose of not paying for the goods.

II. It is insisted, however, that the right of rescission was waived by instituting suit, aided by a writ of attachment, for the purchase price. That where there are two remedies based upon inconsistent rights, the adoption of one, with full knowledge of the facts, is an irrevocable election which will bar resort to the other, is conceded. See *Kearney Milling & Elevator Co. v. Union Pac. Ry. Co.*, 97 Iowa, 719; *Bank v. Dows*, 68 Iowa, 460; *Richards v. Schrieber, Conchar & Westphal Co.*, 98 Iowa, 433; *Crawford v. Nolan*, 70 Iowa, 97. But plaintiff is within the exception intimated, as it brought suit for the purchase price in ignorance of facts indicating fraud in obtaining the goods. It appears that the secretary of plaintiff first learned of the execution of the mortgages August 9, 1898; dispatched an agent to ascertain the facts the following morning; and soon afterwards employed an attorney at Avoca to sue out a writ of attachment, and cause it to be levied on such property of Grantz & Gloe as he thought proper. Up to the time of this levy, the secretary knew nothing of the mortgages save their existence, and that they covered property of the firm, and was not advised of the fact of insolvency further than indicated by their execution. Neither did he, nor the attorney or agent mentioned, then have knowledge that the wagons and boxes were still in possession of the firm, or that the mortgages were withheld from record by agreement. In short, they acted in ignorance of the facts establishing the fraudulent character of the purchase. True, the attorney, as a ground

for the issuance of the writ of attachment, averred the goods were procured through false pretenses, but the record conclusively shows that at that time he had no information of the above matters. The levy was made at about noon, and the information attributed to the attorney and agent was acquired after, and not before, the levy, as contended by appellants. The negotiation for settlement satisfactorily explains the delay in dismissing the action for the purchase price and suing out the writ of replevin, especially as all parties were promptly advised of the election to rescind, when determined upon August 11, 1898.—Affirmed.