REDHEAD BROTHERS, Appellees, v. THE WYOMING CATTLE INVESTMENT COMPANY, Appellants.

**Sales:** BREACH OF CONTRACT: ELECTION OF REMEDIES. Where the vendor of personal property, after tender and refusal, brought action to recover the contract price, he was not barred on the ground of election of remedies from thereafter amending and asking a recovery of damages for breach of the contract.

**Tender:** DAMAGES: INSTRUCTIONS. Where plaintiff, under a contract to sell defendant a certain number of registered cattle, tendered a lot that were unregistered and therefore refused, and subsequently tendered another lot which were registered but not accepted, whereupon plaintiff brought his action for damages and his testi-

mony as to damage was confined to the registered animals, an instruction permitting the jury to base its finding upon the first tender of which there was no evidence .as to damage, was error.

Sales: DUTY OF VENDOR. Where the seller of cattle knew that the purchaser intended them for breeding purposes, he was bound to deliver only such as were suitable for the purpose.

Sales: COMPLIANCE WITH CONTRACT: EVIDENCE. Under a contract to sell thoroughbred bulls suitable for service, it is competent to show that the tender of a calf of five months was not a compliance.

Sales: COMPLIANCE WITH CONTRACT. The fact that an animal is valuable will not obviate the objection that it is not in compliance with the contract of sale.

Sales: DAMAGES: MARKET VALUE. Where the vendor of cattle for breeding purposes, after tender and refusal, elects to retain the same and claims as damages the difference between the contract price and the market value at the time and place of delivery named in the contract, the value of the cattle for beef was not the proper measure of damages, although their delivery was fixed at a time when there was little sale for breeding purposes, but the jury should have been permitted to consider the fact that the season would soon reopen and to look to sales of similar property within a reasonable time of the delivery together with the cost of keeping the animals, in determining their market value.

Market value: EVIDENCE. In an action to recover the market value of cattle sold for breeding purposes which were tendered under the contract and refused, the defendant should be permitted to show the price at which plaintiff sold the same within a short time of the tender, as bearing on the question of their market value.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

MONDAY, JANUARY 16, 1905.

THE opinion states the facts necessary to an understanding of the case.— *Reversed.*

*Read & Read,* for appellant.

*Carr, Hewitt, Parker & Wright,* for appellees.

WEAVER, J.— The plaintiffs bring this action at law to recover judgment against defendant corporation; stating its claim or cause of action in two counts. The first count alleges the sale by plaintiffs to defendant of twenty Hereford bulls, upon terms stated in a written contract, reading as follows:

Des Moines, Iowa, Sept. 24, 1900. This Agreement Witnesseth: That Redhead Bros., of Des Moines, Ia., have this day sold to The Wyoming Cattle and Investment Company, of Des Moines, Ia., for shipment to their ranch twelve miles east of Cheyenne, Wyoming, twenty selected thoroughbred Hereford bulls, to be picked out by Geo. S. Redhead. In consideration of the above sale The Wyoming Cattle and Investment Company will pay to said Redhead Bros. twenty-six hundred dollars, ($2600.00) and the delivery of twelve (12) shares of paid up non-assessable stock in The Wyoming Cattle and Investment Company. Cattle will be delivered on the cars at Des Moines or other convenient point, on or before July 1, 1901, when payment shall be made. Redhead Bros., By Geo. S. Redhead.

It is alleged that, pursuant to said agreement, George S. Redhead did pick out the requisite number of bulls, and on July 1, 1901, plaintiffs tendered a delivery of them to defendant on the cars at Des Moines, Iowa, but defendant refused, and has ever since refused, to receive or pay for said animals. On these allegations the plaintiffs, expressing their continued readiness to make the delivery, demand judgment for the contract price. The second count of the petition restates the foregoing allegations of fact, and seeks to recover an additional sum for services rendered and expenses incurred in keeping the bulls from the date when defendant refused to receive them. Answering the petition, the defendant admits the making of the contract, and admits that said plaintiffs did tender the delivery of twenty bulls, but denies that they were of the kind, character, or description designated in the written agreement. Further answering, de-

fendant says that George S. Redhead, mentioned in the contract, was a member of the plaintiff firm, and represented himself as being a man of experience and skill in the business, and as having special knowledge of the quality, fitness, and value of bulls for the purposes for which they were being purchased, and would give defendant the benefit of his knowledge and experience in the selection of first-class animals, and that, relying upon such representations and promises, defendant entered into said contract. It is further alleged that from and after April 1, 1901, defendant was ready and willing to carry out the contract according to its terms, but the bulls picked out by the said George S. Redhead and tendered to defendant were of inferior quality, unfit for the purposes for which the purchase was made, and were not of the kind, quality, or value called for by the contract, for which reason the tender was refused. The defendant also pleaded a counterclaim, which was subsequently withdrawn by the court from the jury, and is not involved in this appeal. Some months after the issue was joined, plaintiffs amended their petition, stating a claim for damages on account of the defendant's alleged breach of the contract of purchase, to which defendant answered that, by instituting the suit for a recovery of the contract price of the bulls, plaintiffs were bound by their election of said remedy and waived their right to a recovery of damages. There was a trial to a jury, and verdict for the plaintiffs in the sum of $2,747.50. A motion for a new trial was overruled, and from the judgment rendered upon such verdict the defendant appeals.

I. The appellant urges that a claim to recover the full contract price as for a completed sale, and a claim to recover damages for defendant's refusal to accept the property, are

1. SALES: breach of such inconsistent nature that, having brought
of contract;
election of suit upon the former, plaintiffs are bound by
remedies. the election thus made, and must recover upon
that theory or not at all. The point is pressed upon our at-

tention with much earnestness, but we think it cannot be sustained. If the two claims asserted by plaintiffs were essentially inconsistent, the rule relied upon by counsel might well be invoked. In no case decided by this court has the election of remedies been more thoroughly considered than in *Elevator Co. v. U. P. Ry. Co.*, 97 Iowa, 719. Upon a careful review of the authorities it was there said: " A man may not take two contradictory positions, and where he has two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge or means of knowledge of such facts as would authorize a resort to each, will preclude him from thereafter going back and electing again."

In the case at bar the claim presented by the amendment involves no repudiation or denial of the facts alleged in the original pleading. Both demands are based upon the theory of an enforceable contract of sale, and a refusal of the defendant to receive and pay for the property. If plaintiffs were right in their contention, and had made a good and sufficient tender of delivery, they could keep their tender good and recover the full contract price; or, if the market value of the property was less than the contract price, they could give defendant credit for such value and recover the difference as damages. If, after having brought suit for the contract price, plaintiffs concluded that, in view of a protracted contest, it was better to avoid the accumulating burden which the keeping of the animals in readiness for delivery would involve, and to modify their claim to one for damages, we see no good reason why it should not be permitted. Or if, after beginning their action and before trial, they discovered that a demand for the purchase price was not sustainable, we think they were at liberty to abandon it, and, by amendment or by the institution of a new suit, ask a recovery in damages. The claim in either case is based upon the written contract, and, in one form as well as in the other, a re-

covery gives the plaintiffs neither more nor less than the benefit of the sale which the contract witnesses. If the defendant's theory of the facts be correct, there was never a completed sale, and the title to the property never passed. If this be true, plaintiffs' action to recover the contract price could not be sustained, and in such case the abandonment of that claim and the setting up of a claim for damages would not violate the rule as to the election of remedies, because no remedy under the first form of their demand had ever been open to them. In other words, an election exists only where two or more inconsistent remedies are open to the party and he is at liberty to pursue any one of them. It cannot exist between consistent and concurrent remedies, or between a rightful remedy and one which the party may mistakenly suppose to be applicable. As bearing more or less directly upon this view of the law, see 7 Encyclopædia Pleading and Practice, 362; *Ames v. Moir*, 130 Ill. 582 (22 N. E. Rep. 535); *Kingsbury v. Kettle*, 90 Mich. 476 (51 N. W. Rep. 541); *Wright v. Ritterman*, 1 Abb. Prac. (N. S.) 428; *Kinny v. Kiernan*, 2 Lans. 492; *Smith v. Bricker*, 86 Iowa, 285.

II. Concerning the alleged tender, the evidence tends to show the following facts: A few days prior to July 1, 1901, one of the plaintiffs called upon the defendant's representative, D. H. Kooker, in the city of Des Moines, and had some conversation with him regarding the delivery of the bulls, and Kooker expressed a wish to see the animals. It was arranged that he should go to the plaintiffs' farm for that purpose, and on July 2d the visit was made. George S. Redhead pointed out to Kooker two pens containing ten bulls each, and informed him that these were the animals which he had selected and proposed to deliver in fulfillment of the contract. One lot of ten was represented as registered thoroughbreds, while the other lot was unregistered, but was claimed to come within the terms of the agreement. Kooker objected to the last-mentioned lot, not only because they were unregistered,

2. TENDER: damages; instructions.

but also because of their alleged inferior quality, and refused
to accept them.    At some time during this visit Kooker made
a request for a list of the bulls, but it was refused, or, at
least, was not then furnished.    The interview seems to have
ended with no definite understanding between the parties.
On the following day one of the plaintiffs called upon
Kooker, giving him a list of the names, registry numbers,
and ages of twenty registered bulls which they offered to
deliver, but Kooker refused to accept them for the defendant.
The list referred to included the ten registered bulls which
had been offered to Kooker on the preceding day, and ten
others which George S. Redhead had thereafter selected and
substituted in place of the ten which were unregistered.    In
this latter selection was a calf then but little more than
five months old.    While plaintiffs allege a tender of the bulls
called for by the contract, and defendant admits that a tender
was made, it appears that the allegations and admission do
not refer to the same offer.    As we have already noted, the
testimony on part of the plaintiffs tends to show two separate
and distinct offers to deliver — one on July 2d, of twenty
bulls, only ten of which were registered; and another on
July 3d, of twenty bulls, all registered.    Defendant claims
that its admission has no reference to the offer which plain-
tiffs claim to have made on the latter date, and denies that
any offer or tender of the twenty registered animals was ever
made.    Upon this phase of the controversy the court in-
structed the jury as follows:

Fifth.  The evidence in this case discloses that the plain-
tiff offered to the defendant, on the 2d day of July, twenty
bulls, all of which he claimed were pure-bred selected Here-
ford bulls, but ten of which were not registered bulls.    And
with regard to this tender you will determine whether or
not the same was rejected by the defendant at the time it
was made; and, if you find from the testimony that it was
rejected, you will then consider and determine, as in these
instructions defined, whether or not the bulls so tendered

were a substantial compliance with the contract between the parties; and, if the same was not a substantial compliance with the said contract, you will then find for the defendant. But if you find that the said tender was not rejected by the defendant, and that, for any reason whatsoever, the said tender was neither accepted nor rejected, then the plaintiff would have the right, if, in his judgment, fairly and honestly exercised, he concluded that twenty bulls, all of which should be registered, would better meet the requirements of the defendant, to modify the tender which he had made by tendering to the defendant such registered bulls. *And if you find that the tender of the plaintiff was, under the circumstances above referred to, modified, and a second tender made in an honest effort by the plaintiff to meet the requirements and best interests of the defendant, then, if either of the said tenders was such as would be a substantial compliance with the said contract, the plaintiff will be entitled to recover.*

The giving of this instruction as modified by the clause which we have italicized was error. At this stage of the case plaintiffs were no longer seeking to recover the full contract price, but the difference between the contract price and the value of the bulls which they had tendered to defendant in performance of the contract. For that purpose they clearly elected to rely upon the tender alleged to have been made on July 3, 1901, of twenty registered bulls, which they list and particularly describe in testimony. It is the market value of this particular lot of twenty registered bulls of which they offer evidence on the trial and with which they propose to credit the defendant. No attempt is made to show the value of the ten unregistered bulls alleged to have been tendered on July 2d, and testimony as to these animals and the disposition which had been made of them was excluded upon plaintiffs' objection. Bearing this condition of the record in mind, the error pointed out in the instruction under consideration will readily be apprehended. It directed the jury that if a tender was made and refused on July 2d, and a different or " modified " tender was made and refused on

July 3d, and either of said tenders was in substantial compliance with the contract, then plaintiffs were entitled to recover. This direction would allow the jury to find for plaintiffs upon the tender of ten registered and ten unregistered bulls, and to assess the damages on the basis of the contract price as compared with the market value of the twenty registered bulls. It is obvious that proof of a tender of a specific lot of bulls, without any proof of their actual market value at the time and place, afforded the jury no basis on which to esimate or compute damages; and certainly proof of the tender of a specific lot on July 2d, and of the value of another and different lot tendered on July 3d, would be equally objectionable. Whether this instruction would have been proper in an action to recover the entire contract price, it is not necessary for us to decide under the issues as they now stand; it is sufficient to say that as a rule of damages it was misleading and therefore prejudicial.

III. The extent of the authority given by the contract to George S. Redhead is a matter to which counsel have given considerable attention in argument, and, without extending

3. SALES: duty of vendor.

this opinion to discuss the various propositions advanced, we think that his discretion in picking out the bulls was confined to a selection from pure-bred Hereford stock of good quality and of suitable age and condition for the uses and purposes for which plaintiffs knew the purchase was being made. It is conceded in the record that one of the bulls included in the list alleged to have been tendered on July 3d was a calf of five months, and defendant also contends that others were so old as to be without substantial value. Plaintiffs knew that defendant intended these animals for use for breeding purposes upon its ranch in Wyoming, and, in the absence of other specifications, we think they were bound to select and deliver such only as were then suitable for that use, and whether this duty was performed was a question for the jury.

Proceeding on that theory, defendant sought to prove

by expert witnesses that a calf of five months was not fitted
or adapted to use for breeding purposes, but the testimony

4. SALES: compliance with contract; evidence.

was excluded on plaintiffs' objection. For the
reasons already given, it should have been admitted. To hold otherwise is to say that, if
George S. Redhead had picked out and plaintiffs had tendered the delivery of twenty immature calves, defendant
would have been bound to accept them in full satisfaction of
plaintiffs' undertaking to sell twenty thoroughbred Hereford
bulls of the age, quality, and condition required for breeding
purposes. Such an interpretation of the contract, it is very
apparent, was not within the contemplation of the parties.

The suggestion in argument that the calf tendered by
plaintiff was the most valuable of the entire lot does not
answer this objection. The money value of the animal is

5. SALES: compliance with contract.

not the standard by which compliance with the
contract is to be determined. Among the defendant's requests for instructions to the jury,
the fifth was based upon the proposition we have here affirmed, that plaintiffs were under obligation to deliver bulls
suitable and fit for use in the breeding season of the fall of
1901, and the refusal to so instruct was error.

IV. If plaintiffs made a tender of the bulls in substantial compliance with the contract, and such tender was
refused, it was doubtless their right to proceed at once to

6. SALES: damages; market value.

sell the animals on defendant's account, and, if
less than the contract price was realized, to recover the difference in a proper action therefor.
They do not claim to have done this, but pursued the alternative course of retaining the bulls and making claim for
the alleged excess of the contract price over the actual or
market value of the property at the time and place named
in the agreement. The testimony tends to show that the
selling season for animals of this kind extends from early
autumn until late spring, and that during July, and perhaps
August, the demand is practically suspended, or, at best,

is light and irregular. It was the theory of plaintiffs that on July 1st there was no market for these animals for breeding purposes, and that their value was simply what could be realized by their sale for beef, being from two to three cents per pound for gross weight. It is upon this basis that the claim for damages is made. The court instructed the jury that plaintiffs' measure of recovery, if anything, was the difference between the contract price of the bulls and their reasonable market value at the date of the tender. It also defined reasonable market value as " the price that animals of the kind and character specified in the contract and tendered to defendant, would bring in the open market at the time of such tender." The jury were further told that in determining this value they should take into consideration the breeding and quality of the animals, the demand for such property for any purpose, and, if there was a market therefor on which they would command a greater price than for butcher stock, such greater value should be adopted in computing the damages. To this the court added: " But you should ascertain the value of those animals on the day they were tendered to defendant, whatever it may be, and, if the plaintiffs are entitled to recover, allow them the difference between that market price and the contract price as hereinbefore explained to you."

We think the court was correct in saying to the jury that the " value of the animals on the day they were tendered " is the value which is to be compared with the contract price in ascertaining the damages, if any. But the instruction as a whole seems capable of being construed to mean that, if on that particular day there was no demand for the bulls for breeding purposes, the plaintiffs could elect to hold them and credit defendant with their value as butcher stock. This, in our judgment, is stating the rule of law too narrowly, and might easily result in great injustice. It may be assumed as a matter of common knowledge that thoroughbred Hereford bulls of suitable age and condition

for breeding purposes are not ordinarily reared, bought, or sold upon the open market or otherwise for beef. Doubtless when, by reason of age or misfortune, they are no longer of value as breeders, they find their way under some disguise to the meat market, but it was not this class or kind of animals which the plaintiffs undertook to sell. Now, if it be true, as we have said, and as the testimony tends to show, that in the midsummer season there is no " open market " for bulls for breeding purposes, it does not necessarily follow that plaintiffs were entitled to retain them and credit defendant with their comparatively nominal value as butcher's stock. The mere fact that no sales were being made on July 1st for breeding purposes is not conclusive of the fact that the animals had no market value for such purposes. Market value has been said to be such sum of money as the property is worth in the market generally to the persons who would pay the just and full value, or what the property would bring at a fair sale where one party wants to sell and the other to buy. *Low v. R. R.*, 63 N. H. 557 (3 Atl. Rep. 739; *Esch v. R. R.*, 72 Wis. 231 (39 N. W. 129); *Kansas City R. v. Fisher,* 49 Kan. 17 (30 Pac. Rep. 111); *Lawrence v. Boston,* 119 Mass. 128.

In *Bullard v. Stone,* 67 Cal. 480 (8 Pac. Rep. 17), speaking of the buyer's remedy against the seller, market value is said to mean the price or sum for which an equivalent could be reasonably and fairly purchased at or near the place where the property should have been delivered, and *within a reasonable time after* a refusal to deliver. In *Railway Co. v. Woodruff,* 49 Ark. 390 (5 S. W. Rep. 792; 4 Am. St. Rep. 51), it is defined as the price which a vendor can obtain after *reasonable and ample time taken to effect a sale.* The rule thus stated, especially as applied to a case where the seller does not exercise his option to sell the property on the buyer's account, commends itself to our ideas of fairness between the parties. We think it safe to say that if, according to the usual and known method of trade, such property com-

manded materially better prices for breeding purposes than for slaughter, and the market demand therefor was confined to the season between September 1st and June 1st, and the day fixed for the delivery was within the period when no such demand existed, then, in considering the value of the animals for breeding purposes, the absence of a present or immediate demand did·not of itself establish their want of market value for such purposes within the meaning of the law; but the jury should have been allowed in this connection to take into consideration the fact that the market season would soon reopen, and to look at such sales of similar property as the testimony might show were made in that vicinity within a reasonable time both before and after the date of the tender. *Conner v. Baxter,* 124 Iowa, 219; *Cahen v. Platt,* 69 N. Y. 348 (25 Am. Rep. 203). If, upon a full and fair review of all pertinent facts, it should be found that the bulls, although fit and suitable for the purposes contemplated in the contract, were nevertheless worth more as butcher's stock, then, of course, their value for the latter purpose would be the basis ·for computing damages, but not otherwise. Let us emphasize the reasonableness of the rule by supposing that the property to be delivered is a threshing machine to be delivered in midwinter, when there is neither demand nor employment for such machinery; could the seller, upon this offer of delivery being refused, retain the property, giving the purchaser credit for its value as old iron and firewood, because there was no immediate market demand for threshing machines? The inquiry answers itself. It would seem entirely competent in such case to consider the prevailing prices for such property during the season just closed, the occasional sales, if any, since the close of the season, the sales made within a reaonable time after the tender, and the apparent prospect or outlook for the trade in the approaching season, and therefrom, with due regard for the expense and risk of holding the property until the trade reopens, find its fair

and reasonable value for the purposes for which it is specially designed and fitted.

The defendant attempted, but was not allowed, to show by plaintiffs that within a short time after the alleged tender they sold the bulls for breeding purposes at a price much in excess of the value to which they now testify.

7. MARKET VALUE: evidence. The testimony was competent and material, both as tending to show that there was in fact a market demand for such property at or about the date of the tender, and as having some weight upon the disputed question of values. *Camp v. Hamlin,* 55 Ga. 259; *Peters v. Cooper,* 95 Mich. 191 (54 N. W. Rep. 694). The objection to this testimony should have been overruled. It is to be understood, of course, that it is the value of the bulls on the day they were to be delivered which is to be found, and proof of sales at other times either before or after that date is to be considered only for what the jury may find it worth in determining that ultimate fact.

V. Exception is taken to the withdrawal of defendant's counterclaim from the jury, but, in our judgment, the evidence would not sustain a finding thereon in defendant's favor, and the court did not err in refusing to submit it. Many other alleged errors are assigned and argued, but the questions thus presented are governed by the conclusions already stated, or are of a nature not likely to arise on a retrial.

For the reasons stated in this opinion, the judgment below is *reversed.*