C. H. SEELEY, Plaintiff, v. SEELEY-HOWE-LEVAN CO. ET
AL., Defendants. C. W. JOHNSTON, Receiver, Appel-
lee; SWEETSER, PEMBROOK & CO., Intervener, Appel-
lant.

**Receivers:** RIGHT OF SELLER TO RECOVER GOODS.  Where goods are sold
1  an insolvent corporation in reliance on the false representa-
tions of agents of the corporation as to its financial condition,
the seller, upon prompt rescission of the sale, may recover the
goods or proceeds thereof in the hands of a receiver for the
corporation.

**Pleading:** FRAUD.  Where the pleader has attempted to set out the
2  facts constituting fraud, an objection that the pleading is not
sufficiently specific must be taken advantage of by motion.

**Fraudulent sales:** ELECTION OF REMEDIES.  Where the seller of
3  goods, after knowledge that the sale was procured through
the fraudulent representations of the buyer, treats the sale as
valid and attempts to collect the purchase price, he cannot on
failure to make collection, elect to rescind the sale and re-
cover the goods.  Evidence held sufficient to warrant a finding
that the seller elected to treat the sale as valid.

**What constitutes an election of remedies.**  An unequivocal act of
4  the seller of goods, after discovery of the buyer's fraud in in-
ducing the sale, by which he elects to treat the sale as valid,
whether made in court or not, is a sufficient election to pre-
clude him from subsequently rescinding the sale on the ground
of fraud.

**Effect of election.**  An election of remedies once made is final and
5  conclusive even though no prejudice arose thereby.

*Appeal from Polk District Court.*— HON. A. H. McVEY,
Judge.

TUESDAY, NOVEMBER 21, 1905.

Rehearing denied May 24, 1906.

THIS is a proceeding to establish a preferred claim in a
receivership proceeding upon the proceeds of certain goods

which it is claimed were obtained from the intervener, Sweetser, Pembrook & Co., by the Seeley-Howe-Le Van Company through false and fraudulent representations, and with intent not to pay for the same. The receiver denied the alleged fraud; pleaded that intervener elected to confirm the sale, and is estopped from repudiating it; and laches on its part after discovering the alleged fraud. The case was tried to the court without a jury, resulting in a judgment dismissing the petition of intervention, and intervener appeals.— *Affirmed.*

*Berryhill & Henry,* for appellant.

*N. T. Guernsey* and *E. D. Samson,* for appellee.

DEEMER, J.— The questions presented are neither new nor complicated. The Seeley-Howe-Le Van Company was a corporation doing business in the city of Des Moines. Between the 2d day of January and the 3d day of March, 1902, Sweetser, Pembrook & Co. delivered to said corporation, upon an order taken in November, 1901, a large quantity of goods upon credit. It is claimed that these goods were obtained by fraud, in that the corporation, through its agents and by means of reports to a commercial agency, falsely represented its financial condition and the state of its accounts, which representations were relied upon by the intervener, and were the inducement to the sale. It is also claimed that the corporation was in fact insolvent at the time of the sale, which fact its officers knew, and that, when it purchased the goods, it did not intend to pay for them. We are constrained to hold that both of these claims are true, and that, if intervener had promptly rescinded the sale, it might have secured the goods or the proceeds thereof in the hands of the receiver. *Deere v. Morgan,* 114 Iowa, 287, is the only authority we need cite in support of this proposition, although there are many other cases equally applicable.

1. RECEIVERS: right of seller to recover goods.

Appellee's contention that the petition of intervention is not sufficiently specific is without merit. There were sufficient allegations to indicate the general nature of intervener's claim, and, if the receiver desired a more specific statement, he should have moved therefor. Of course, mere general statements of fraud are insufficient. But where attempt is made to set out the exact claim made, if that be not sufficiently specific, the defect must be reached by motion, and not by such a claim as is here made in argument only.

2. PLEADING: fraud.

We shall not set out the facts upon which we base our conclusion of fraud. They are many and cogent, and lead to the inevitable conclusion that a manifest fraud was attempted to be perpetrated upon the seller of the goods. So that intervener is entitled to recover, unless it be for some of the matters pleaded by the receiver in answer to the intervener's petition. These are, first, an election by the intervener with full knowledge of the facts to treat the sale as valid; and, second, acquiescence and delay on its part for such a length of time as to bar it of the remedy of rescission. As said in *Elevator Co. v. U. P. R. R. Co.,* 97 Iowa, 719: "The rule in regard to the election of remedies is stated in *Thompson v. Howard,* 31 Mich. 312, as follows: 'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. Any decisive act of the party, with knowledge of his rights and of the fact, determines his election, in the case of conflicting and inconsistent remedies.'" Again, the right to rescind must be exercised within a reasonable time after the discovery of the fraud. *Upton Mfg. Co. v. Huiske,* 69 Iowa, 557. In *Evans v.*

3. FRAUDULENT SALES: election of remedies.

*Montgomery,* 50 Iowa, 325, it is said, in speaking of rescission for fraud: " The law requires him, upon discovering the fraud, to announce and adhere to his purpose of rescinding the contract. This announcement should have been made certainly within a reasonable time. A delay of three years, and acts and declarations inconsistent with such intention, would raise the legal presumption that he had ratified the contract and waived all right to rescind it "— citing *Rawson v. Harger,* 48 Iowa, 269. See, also, *Grymes v. Sanders,* 93 U. S. 55 (23 L. Ed. 798).

We turn now to the record to discover if intervener made such an election, inconsistent with its right to rescind and recover the goods, or did such things, with knowledge of the fraud which had been perpetrated upon it, as to evince an intention to waive its right of rescission and to ratify the contract, or, as the books say, " did play fast and loose in the matter." The receiver was appointed on the 17th day of March, 1902, and on the 24th of that month one Walsh, representing the intervener, appeared in Des Moines, where the insolvent corporation had been doing business, and immediately proceeded to advise himself regarding the affairs of the corporation. His employers had already suggested to him the remedy of replevin. A motion was made to discharge the receiver, and a hearing was had, which ·involved an investigation of all the business affairs of the concern. Walsh was present at this hearing, and, claiming to represent one of the largest creditors of the corporation, undertook to advise the trial court as to the best course to pursue to wind up the corporate affairs. After learning all of the facts relating to the corporation he undertook to adjust the matter of his employer's claim for the benefit or supposed benefit of his principal, and entered into many negotiations for the sale of the goods then in the receiver's hands. Both he and his employer knew they had the right to replevin such goods sold by them as remained in the stock, for their correspondence is conclusive on this point. Instead of immedi-

ately repudiating the sale, they encouraged and advised the court and the receiver to make sale of the goods of the corporation then in the hands of the receiver, and consulted with both as to the best manner of making the sale. They entered into a written contract with one A. E. Seeley, the wife of C. H. Seeley, one of the members of the corporation, whereby they undertook to bid at the receiver's sale, for the goods, furniture, and fixtures, a sum not exceeding $31,000, for the purpose of protecting their entire claim, amounting to something over $4,000, hoping in this way to secure at least fifty cents on the dollar upon the entire claim. True, by the terms of the contract they were to resell the goods to A. E. Seeley, and she was to put up $5,000 of the purchase price before they made the bid, which she never in fact did. Intervener did, however, attend the receiver's sale, and under an arrangement with another proposed purchaser bid upon the goods; its bid being within $10 of the highest one at the sale. It made every effort within its power to obtain a settlement of its claim, and to secure a part of it, at least, through the receivership proceedings, and at all times down to the commencement of this suit, which was on the 16th day of April, 1902, recognized the corporation as its debtor for the entire amount of goods shipped it, although it had full knowledge of the fraud perpetrated upon it, and of its right to bring a replevin action to recover the goods.

As it failed to get the goods at the receiver's sale, and as all of its plans and arrangements with other persons to acquire the stock and thus protect it failed, it commenced this action, which is in the nature of a replevin proceeding, claiming, not as a creditor, but as the holder of the legal title to the goods shipped by it to the corporation. It undoubtedly entertained the motion of taking such goods as it could identify, should its other plans fail, from the very beginning; but it concluded to try some other remedy first, holding the replevin proceedings in reserve in the event it failed to secure its claim or a considerable proportion thereof

as a general creditor of the corporation. As a matter of fact it did not bring its action of replevin until its other plans failed and it discovered that it was not going to secure any considerable part of its claim as a general creditor. As said in Grymes v. Sanders, *supra:* " Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." See, also, as announcing the same rule, *Schiffer v. Dietz,* 83 N. Y. 300; *Dennis v. Jones,* 44 N. J. 513 (14 Atl. 913, 6 Am. St. Rep. 899); *Bell v. Keepers,* 39 Kan. 105 (17 Pac. 785); *Terry v. Munger,* 121 N. Y. 161 (24 N. E. 272, 18 Am. St. Rep. 803, 8 L. R. A. 216). Indeed, this rule is unquestioned and undisputed; and the main question in the case is one of fact: Did intervener, with full knowledge of the facts, either expressly or impliedly affirm the contract of sale or recognize it as binding? Did it place itself in a position to play fast and loose? Did it, by delay, vacillation, or acquiescence, for a considerable length of time after discovering the fraud so treat the transaction as to be held to a ratification of the sale? These questions were primarily for the trial court, which evidently held that there was an election on the part of the intervener to treat the sale as valid. With this finding we are constrained to agree.

Appellant says, in answer to these propositions, that it was not only a general creditor on account of goods sold which could not be identified, but as well a claimant to spe-
4. WHAT CONSTI-
TUTES AN ELEC-
TION OF REME-
DIES.
cific articles of goods then in stock by reason of the fraud perpetrated upon it; and that it had the right, as a general creditor, to do what it did without being held to a ratification of the entire transaction.

There may be some doubt of this proposition of law, but, conceding arguendo its correctness, the facts are not such as to make it applicable here.    Intervener did not, by any conduct on its part, indicate, when treating the sale as valid, that it was ratifying but a part of the transaction.    It did not at any time separate its claim into one arising upon contract and another for tort.    In all that it did as a general creditor it treated its account as an entire one, and ratified the entire transaction, if it ratified any part of it. But it is said that, as intervener took no legal steps to enforce its rights as a general creditor, the doctrine of election of remedies does not apply.    This is, perhaps, technically true, but this is a case of election of rights as well as one where the doctrine of election of remedies might apply, and no action in court need be taken as the basis for such an election.    Any unequivocal act with knowledge of the fraud, whether in court or not, is sufficient.

Further, it is argued that, as no one was prejudiced, the doctrine of election does not apply.    But this is not a sound proposition of law.    If it were, there is enough in inter-

5. EFFECT OF ELECTION.    vener's conduct to supply this element of estoppel.    In the Elevator Case, *supra,* it is said that an election once made is final and conclusive, even though no injury has been done by the choice, or would result from setting it aside.    See, also, on this proposition, *Terry v. Munger,* 121 N. Y. 161 (24 N. E. 272, 18 Am. St. Rep. 803, 8 L. R. A. 216).    While the delay in this case was not in itself sufficient to indicate an election, the trial court was justified in finding that it was accompanied by such acts and conduct on the part of intervener as to evince an election on its part to treat the corporation as its debtor for the full amount of the goods shipped.

The degree of the district court seems to be correct, and it is *affirmed.*