LLOYD D. MOBLEY, appellee, v. BOYT FARMS COMPANY, appellant.

No. 51172.

(Reported in 126 N.W.2d 280)

February 11, 1964.

Whitesell Law Firm, of Iowa Falls, for appellant.

108

Hemingway & Hemingway, of Webster City, for appellee.

THORNTON, J.—Plaintiff went to work for defendant as a farmhand in 1958, he continued in this employment until June 12, 1961. Defendant is a corporation farming 1300 acres. In 1959 plaintiff loaned defendant $10,000, taking a note for that amount. In February 1960 plaintiff and defendant entered into a contract whereby plaintiff was to run a herd of beef cows on defendant's farm with defendant to receive one third of the calf crop at weaning time. From the evidence and circumstances known to the parties at the time of contract the terms of the contract are found to be as follows. Defendant would let plaintiff run a herd of beef cows on its farm in exchange for one third of the calf crop at weaning time in the fall with an option to purchase plaintiff's two thirds. The contract was to continue from one calf crop to another until terminated by either party. Plaintiff was to continue his regular employment and in general care for the cattle at odd hours except as necessity required otherwise. Defendant was to furnish pasture, cornstalks and incidental use of farm equipment. The pasture was to remain substantially as of the time of contract, February 1960. Defendant was to furnish hay to be paid for by plaintiff. The amount of cornstalks was to vary according to the operation of the farm by defendant in accord with the known experience of the parties. Plaintiff was to pay all other expenses such as protein supplement and supplies.

From February to June 1960 plaintiff purchased 142 cows, 42 had calves at their sides when purchased. He also purchased three bulls and later a Charolais bull. The cows were first turned into the cornstalks and later into the pasture containing approximately 240 acres. Plaintiff used hay obtained from defendant for the cows that spring and paid for it. November 29, 1960, when the calf crop was divided, defendant exercised its option to purchase plaintiff's two thirds of the calves and paid plaintiff $7699.19. At that time 97 calves were divided, 31 were too small to wean and were carried over. Included in the 97 calves divided were the 42 calves running at their mothers' sides when plaintiff purchased them in the spring of 1960, no mention

of them was made at that time by either party. In the winter of 1960-1961 plaintiff ran the cattle in the cornstalks and used approximately 80 tons of hay obtained from defendant. In the spring of 1961 defendant plowed up 20 acres of pasture plaintiff was using. This made him short of pasture and he rented more pasture from a neighbor for $120. Defendant offered to pay plaintiff one third of this amount but plaintiff refused without giving a reason. June 12, 1961, plaintiff and defendant's manager had a conversation relative to hay. All the hay had been green chopped and plaintiff was interested in what he was going to feed his cows in the winter. The manager told him he would have to buy hay elsewhere. Plaintiff considered defendant was refusing him hay, quit his employment and sold the herd June 21, 1961.

On August 5, 1961, plaintiff started this action on the note; after motions on October 28, 1961, defendant filed its answer and counterclaim in two divisions. The counterclaim, without reference to the calf crop contract, asked for the value of its performance furnished plaintiff for his cows or restitution. Plaintiff by stipulation was granted time to plead. November 13, 1961, defendant amended its counterclaim by adding thereto another division wherein it asked damages for the value of the supplies etc. furnished plaintiff and for damages for breach of contract, for the value of one third of the calf crop at the normal weaning time in November of 1961. Plaintiff replied. The action was tried in equity by agreement.

The trial court held plaintiff breached the contract and the action of defendant in filing its counterclaim October 28 asking for restitution constituted an election of remedies and barred defendant from recovering in the alternative on its counterclaim filed by way of amendment November 13, 1961. The trial court held defendant was limited to restitution only, but because plaintiff in his reply offered an accounting of the calf crop contract as of June, which was more advantageous to defendant, awarded defendant an offset against plaintiff's note on that basis.

Defendant appeals and plaintiff cross-appeals. Defendant contends it made no election of remedies, it should have been

awarded damages for the market value of the calves in November 1961 and even if there was an election it was entitled to the reasonable value of its performance. If we affirm the election of remedies plaintiff is willing to accept the ruling of the trial court but contends the accounting as of June 1961 should credit him with the cost of the calves running at their mothers' sides when purchased; otherwise he contends defendant breached the contract.

In its decision the trial court points out an injured party has three remedies—damages, restitution, and specific performance (not involved here). If he seeks damages he stands on the contract and asks for the value of the other party's promised performance, whereas if he asks for restitution he rescinds the contract and asks for the value of his own performance. The court further pointed out this situation is not to be confused with the common case where one sues for the value of goods or services in two divisions, one for the agreed amount and the other for the reasonable value, the express contract, quantum meruit cases where in each instance he is standing on the contract. And that this situation should not be confused with our procedure allowing alternative divisions where no election between substantive rights is involved, referring to rules 22, 31 and 72, Rules of Civil Procedure.

I. In this case if defendant had pleaded both divisions of its counterclaim at the same time it could have been compelled to elect which division it would rely on before submission of the case. Restatement of Contracts, section 384, comment b (1932). It did not do so, and so we have the question of whether the filing of its first counterclaim for restitution on October 28, 1961, constituted an election of remedies such as to preclude it from recovering on its second counterclaim for damages filed 16 days later. On the basis of the authorities we are compelled to agree with the trial court.

In this case it is clear the action of plaintiff in selling the herd is such a substantial breach of the contract as to defeat the object of the parties in making the contract and entitle defendant to seek either restitution or damages at its election. Maytag Company v. Alward, 253 Iowa 455, 464, 112

N.W.2d 654, 660; and Restatement of Contracts, sections 326, 347 and 381. And this is true if we consider defendant's plowing up 20 acres of pasture a breach, such breach is minor and readily satisfied by damages. Plaintiff rented other pasture for $120. This was not substantial default on the part of defendant. See Maytag Company v. Alward, supra. Nor was defendant's refusal to furnish hay for the coming winter a breach of the contract. The contract was to run from calf crop to calf crop and this refusal was merely an indication of intention not to renew the contract for the succeeding year.

There is some difference in the position of one claiming restitution because of breach of contract and one claiming restitution because of fraud, an unauthorized act of an agent, or of an infant on reaching majority, in that a choice of remedies is cast on the one claiming because of breach of contract by law, none of which depends on his prior assent. A mere statement of his intention to use one has no legal operation. However, the bringing of a suit is such manifestation in any of these cases. The question is, in what instances, if any, may one change to the inconsistent and alternate remedy?

In the annotation, 6 A. L. R.2d 10, 18, 35, Iowa is listed with the jurisdictions holding the commencement of a suit is, of itself, a conclusive election precluding the plaintiff (here defendant) from thereafter pursuing a remedy inconsistent with the one first chosen.

In Zimmerman v. Robinson & Co., 128 Iowa 72, 102 N.W. 814, 5 Ann. Cas. 960, at pages 73 and 74 of 128 Iowa, page 815 of 102 N.W., the rule is stated:

"It not infrequently happens that for the redress of a given wrong or the enforcement of a given right, the law affords two or more remedies. Where these remedies are so inconsistent that the pursuit of one necessarily involves or implies the negation of the other, the party who deliberately and with full knowledge of the facts invokes one of such remedies is said to have made his election, and cannot thereafter have the benefit of the other. To the proper application of this rule at least three things are essential: (1) There must be in fact two or more concurrent remedies between which the party has the right to elect; (2)

the remedies thus open to him must be inconsistent; and (3) he must, by actually bringing his action, or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies."

In Ellis v. Annis & Rohling, 187 Iowa 423, 173 N.W. 282, a case not dissimilar to this one, where the plaintiff commenced her action for damages July 16, 1914, and on the following November 12 filed an amended and substituted petition in equity tendering a reconveyance of land received and asking a rescission and judgment for the consideration paid, we said at page 438 of 187 Iowa, page 287 of 173 N.W.:

"Plaintiff commenced her action for damages with full knowledge that at least 104 acres of the tract purchased could not be irrigated. This constitutes the only ground upon which a right of rescission existed. The commencement of an action at law, with full knowledge of the alleged fraud, was a conclusive election to affirm the contract and claim damages, and estopped the plaintiff from changing the form of her action to a suit in equity for rescission, based upon the same facts." (Citing cases)

The same is true here, defendant knew plaintiff had sold the entire herd in June of 1961. This was the sole reason giving defendant a right to either restitution or damages, with this knowledge the choice was made and defendant is bound by it. See also Seeley v. Seeley-Howe-Le Van Co., 130 Iowa 626, 105 N.W. 380, 114 Am. St. Rep. 452.

The trial court in determining this question gave defendant the benefit of the more liberal rule stated in section 381, Restatement of Contracts, which we approve. The rule is:

"(1) When the alternative remedies of damages and restitution are available to a party injured by a breach, his manifested choice of one of them by bringing suit or otherwise, followed by a material change of position by the other party in reliance thereon, is a bar to the other alternative remedy.

"(2) The bringing of an action for one of these remedies is a bar to the alternative one unless the plaintiff shows reasonable ground for making the change of remedy."

Comment b makes it clear a plaintiff may amend his peti-

tion if he has a reasonable ground for so doing so long as the defendant has not so altered his position as to make it unjust to permit the change. Defendant here made no showing of a reasonable ground whatsoever.

Defendant cites two of our cases for the proposition that filing a counterclaim is not such an election as bars a later amendment seeking relief on an alternate theory. In Reinertson v. Struthers, 201 Iowa 1186, 1189–1191, 207 N.W. 247, the decision turned on the familiar rule that one who seeks a remedy to which he is not entitled is not thereby precluded from seeking a remedy to which he is entitled. Miller v. Hartford Fire Insurance Co., 251 Iowa 665, 675, 102 N.W.2d 368, 375, actually holds the remedies there under consideration were consistent. Here, of course, the other remedy was not only alternate but inconsistent.

Defendant further urges a number of our cases in support of the proposition there is no election of remedies where the other parties interested have not been adversely affected. There is much support for this in other jurisdictions. See annotation, 6 A. L. R.2d 10, 20. However, our cases do not so hold. In American Savings Bank v. Borcherding, 205 Iowa 633, 216 N.W. 719, the cross-petitioner did amend his cross-petition but there he first pleaded a contract of sale and alleged that by virtue thereof the other party had assumed and agreed to pay a mortgage and asked if a judgment ran against him that he have judgment over on such contract. The amendment asked for reformation of the deed given pursuant to the contract. Actually the pleadings were consistent. In Redhead Brothers v. The Wyoming Cattle Investment Co., 126 Iowa 410, 415, 102 N.W. 144, the claims were either consistent or one was a mistaken remedy. In Deere v. Morgan, 114 Iowa 287, 290, 86 N.W. 271, plaintiff came within the exception of ignorance of the facts indicating fraud. In Pickford v. Smith, 215 Iowa 1080, 1082, 1083, 247 N.W. 256, it was held the commencement of an action in replevin to recover possession of notes on the ground of fraud did not preclude a substituted petition asking cancellation of the same notes for the same fraud. Evans v. Herbranson, 241 Iowa 268, 276, 41 N.W.2d 113, 15 A. L. R.2d 925, deals with the

right of a creditor to pursue his remedies against a purchaser under the Bulk Sales law, the question we have was not under consideration. In Ritchie v. Hilmer, 254 Iowa 309, 314, 117 N.W.2d 443, 447, there was no election of remedies because the remedy first chosen was not available.

■ ■ Defendant also urges a counterclaim may allege alternate counts and its amendment relates back to the filing of its original counterclaim and is construed as a part of it. The simple answer is these propositions are not here applicable. Rule 22, Rules of Civil Procedure, does allow a plaintiff to join alternate causes of action in the same petition and rule 31 makes the same applicable to counterclaims, but this does not abrogate the doctrine of election of remedies. As pointed out, this defendant could have pleaded his alternate causes at the same time but he would have been required to elect on which he wished to submit the case because they are inconsistent and repugnant.

Connell v. Hays, 255 Iowa 261, 122 N.W.2d 341; Davis v. Mater, 248 Iowa 1, 79 N.W.2d 400; and Friedman v. Forest City, 239 Iowa 112, 30 N.W.2d 752, do not deal with inconsistent causes of action, but with consistent causes. Rules 88 and 89, Rules of Civil Procedure, relating to amendments, do not change the doctrine of election of remedies. Defendant itself points out the rules do not change the former Code sections. In each of the cases cited by defendant for the proposition that an amendment relates back to the commencement of the action the amendments related to and amplified the cause of action in the original pleading. Lammars v. Chicago Great Western Railroad Co., 187 Iowa 1277, 1280, 175 N.W. 311; Chariton National Bank v. Whicher, 163 Iowa 571, 582, 145 N.W. 299; Scott v. Frank, 121 Iowa 218, 222, 96 N.W. 764; and Cooley v. Brown, 35 Iowa 475, 476.

■ II. Defendant's complaints on the amount allowed it for the value of its performance are not well taken. It asked for restitution but because the value of its performance was less than the accounting tendered by plaintiff it was awarded recovery on that basis. Here again we are compelled to agree with the trial court. The trial court's findings on the value of sup-

plies, hay, neck chains, wages, meals and house rent are the only values reasonably supported in the evidence.

The remaining items of its performance are use of tractor, use of sprayer, cornstalks and pasture. Defendant is limited to the value of its performance since November 29, 1960, the date of the division of the prior calf crop. The reasonable value of the use of the tractor at $1.50 per hour for 20 hours per month for seven months is $210. The value of the use of the sprayer for a year was placed at $100 by defendant's expert. Only the second calf crop year is to be considered. Defendant claims it is entitled to the value of the corn in the field rather than the value of the cornstalks as such. There is no evidence anyone ever so purchased corn. It is entitled to the value of the cornstalks as such. The evidence is that $1 per acre is a fair and reasonable price in the vicinity. There were 400 acres of stalk left standing in the fall of 1960. The rental value of the pasture is in dispute. The witnesses vary from $2 to $10 per acre. From the description of the pasture and the testimony bearing on the use made of it, a fair rental value would not exceed $5 per acre, or $1200. These items total $1910. In plaintiff's tendered accounting used by the trial court the value of defendant's one third of the calves was placed at $2359.83. This is more advantageous to defendant.

III. Plaintiff in his cross-appeal urges he should be allowed a credit for the value of the calves running at their mothers' sides at the time the cows were purchased. It is true the calf and cow as a pair are worth from $25 to $50 more than the cow would be alone. This increased the cost of the herd to plaintiff. At the time the contract was entered into neither party considered this aspect. These calves were divided and disposed of in November 1960. No adjustment was then made or discussed relative to these calves. Though the record is clear that neither party considered the division and payment for the calves in November 1960 as a general settlement between them, neither party by word or deed indicated this item as one left for future determination. From the meager evidence on this phase of the entire contract we think the intention of the parties at the time the cows with calves were purchased was to handle

these calves the same as calves born after the purchase of the cows. This is what they did in November 1960. The trial court did not consider this item separately, but the effect of its decree is to deny plaintiff's claim in this regard.

Finding no error, the decree of the trial court is in all respects.—Affirmed.

All JUSTICES concur.