Donald M. GRIPENTROG, in Behalf of Himself and All Other Persons Similarly Situated who Come in and Join in the Action, Plaintiff and Appellant,

v.

CITY OF WAHPETON, a Municipal Corporation, and Southern Red River Valley Sugarbeet Corporation, a Nonprofit Corporation, Defendants and Respondents.

No. 8138.

Supreme Court of North Dakota.

Feb. 10, 1964.

Johnson, Milloy & Eckert, Wahpeton, and Dorsey, Owen, Marquart, Windhorst & West, by Arthur B. Whitney, Minneapolis, Minn., for plaintiff and appellant.

Dale McMichael, City Atty., Wahpeton, Wattam, Vogel, Vogel, Bright & Peterson, by Myron H. Bright and John D. Kelly, Fargo, and R. N. Nelson, Breckenridge, Minn., for defendants and respondents.

Helgi Johanneson, Atty. Gen., and Robert A. Birdzell, Sp. Asst. Atty. Gen., Bismarck, amici curiae.

STRUTZ, Judge.

The City of Wahpeton, in order to secure additional employment for its people and in order to encourage industrial activity and development, and to generally improve the welfare of the Wahpeton community, proposes to issue not to exceed $23,000,000 worth of revenue bonds for the acquisition of a site and for the construction of a sugar beet processing plant near that city. It then proposes to lease such plant to the defendant Southern Red River Valley Sugarbeet Corporation under authority which it claims is granted to it by Chapter 40–57 of the North Dakota Century Code.

The city council has taken preliminary steps to avail itself of the provisions of such statute by adopting a resolution which provides, in substance, that the City will acquire fee-simple title to a certain tract of land near the city on which it now holds an option and on which the sugar beet processing plant will be constructed; that the City will prepare plans and specifications for the construction of such plant, which plans and specifications are to be approved by the defendant Southern Red River Valley Sugarbeet Corporation; that the City will, upon completion and approval of such plans,

advertise for bids for the construction of the plant, the total cost of which, including cost of real estate, cost and estimated cost of issuance of the revenue bonds, and all engineering, inspection, fiscal, and legal expense and interest in an amount which it is estimated will accrue during the construction period and for six months thereafter on money borrowed, shall not exceed $23,000,-000; and that, pursuant to the provisions of Chapter 40–57, North Dakota Century Code, the City then will issue revenue bonds in an amount not to exceed $23,000,000, and will arrange for the leasing of such property to the defendant Southern Red River Valley Sugarbeet Corporation.

In taking such preliminary steps to avail itself of the benefits of Chapter 40–57, the resolution adopted by the City requires, among other things, that the lease by the City to the defendant Southern Red River Valley Sugarbeet Corporation will provide for charging of rents to the corporation for the use of the project, which rents will produce income and revenue sufficient to provide for the prompt payment of interest upon all the revenue bonds to be issued; to create a sinking fund to pay the principal of such bonds when due; and to provide for the operation and maintenance of and insurance and taxes on the project.

In this case, the plaintiff challenges the validity of the proposed action of the municipality under Chapter 40–57, and the constitutionality of said chapter. A number of substantial questions are raised, including a claim that the proposed lease does not comply with the law in that it does not provide for rent sufficient to furnish moneys for depreciation of such project; that moneys raised by sale of such revenue bonds cannot legally be used to purchase equipment necessary in the operation of the sugar beet processing plant; that the lessee, defendant Southern Red River Valley Sugarbeet Corporation, cannot legally enter into a lease with the City since it has no resources with which to build or operate the proposed sugar beet processing plant, and has no experience in operating such a plant.

In addition to these questions raising the legality of the proposed project under the law, the appellant contends that the law itself is unconstitutional in that it violates the Fourteenth Amendment to the United States Constitution and Sections 13 and 185 of the North Dakota Constitution.

We first will consider the appellant's argument that the resolution and proposed lease do not conform to the provisions of Subsection 3 of Section 40–57–03, North Dakota Century Code. It is appellant's contention that this subsection grants to the municipality the power to lease, subject to the condition that rents charged shall be sufficient to do all of the following:

1. Produce income and revenue sufficient to provide for the prompt payment of interest on all bonds issued hereunder, to create a sinking fund to pay the principal of such bonds when due;

2. Provide for the operation, maintenance, insurance on, and depreciation of such project; and

3. Pay any taxes thereon.

If the appellant's construction of this subsection is correct, the admitted failure of the proposed lease to fix rent sufficient to provide for depreciation of the project would invalidate the lease.

The construction proposed by the appellant would, in our opinion, create substantial inconsistencies and contradictions between the construed section and other provisions of the statute. The last paragraph of Section 40–57–03 specifically provides that no municipality shall have the power to operate any project. Subsection 4 of Section 40–57–03 provides that all of the rental income may be pledged to the payment of the bonds and the interest thereof.

The requirement that the rents must be sufficient to provide the cost of operation of and depreciation on a project would imply that the moneys collected for such purpose must be used for such purpose, and it would be inconsistent with and con-

tradictory to the provisions that the municipality may not operate the project and may devote all of the rental income to the payment of the bonds and the interest on such bonds. It is a well-recognized rule of statutory construction that, where contradictions arise, the court should construe the statute so as to make it harmonious, if possible. Jones Lumber Co. v. City of Marmarth, 67 N.D. 309, 272 N.W. 190.

■ Standing alone, Subsection 3 of Section 40-57-03 might be given the construction for which the appellant contends. The section, however, is ambiguous. It is also open to the construction that the power to lease is subject only to the condition that the rents be sufficient to pay the bonds and the interest thereon, and that the balance of the section is an additional grant of power to a municipality. In other words, a municipality may, by its lease, provide for the lessee to operate the plant and may further provide for the lessee to maintain the plant and carry insurance on the plant, and it may require the lessee to provide for depreciation and to pay the taxes on such plant. So construed, the inconsistencies and contradictions disappear and the section is in complete harmony with the rest of Chapter 40-57. We therefore adopt this construction.

In this connection, we would specifically point out that Section 40-57-14 of the North Dakota Century Code is in harmony with such construction. That section permits covenants to be put in the resolution authorizing the issuance of revenue bonds, pertaining to maintenance and replacement of depreciable properties, "notwithstanding that such covenants may limit the exercise of powers conferred by this chapter." This section provides a number of areas where discretion may be exercised by the governing board of the municipality, notwithstanding that more powers are granted in those areas by the Act. In the case before us, maintenance and replacement of depreciable properties becomes the obligation of the lessee as a covenant in the contract and lease. We believe this is permissible under Subsection 4 of Section 40-57-14. Thus the rents to be charged for the project shall produce income sufficient to pay interest on and principal of the bonds promptly, and the lease may also provide for the operation, maintenance, insurance on, and depreciation of such project, and any taxes thereon. Only by adopting this construction can all of the provisions of the Act be harmonized.

As a result, the challenge to the proposed lease upon the ground that the rentals fixed are not sufficient to provide for depreciation must be held to be without merit.

The appellant next contends that the trial court erred in concluding that the Municipal Industrial Development Act of 1953, as amended, being Chapter 40-57 of the North Dakota Century Code, authorizes the use of municipal revenue bonds to finance the acquisition of real property, buildings and improvements on real estate, or the building thereon, used or useful in connection with revenue-producing enterprises engaged or to be engaged in processing of agricultural products. The appellant further contends that the court erred in concluding that the revenue bonds may be used to acquire and finance the acquisition of equipment which is affixed to the building, to the land, or to other equipment which is permanently affixed to land or buildings.

■ We believe the trial court correctly concluded that the revenue bonds may be used to acquire real property, buildings, and improvements on real property, including equipment attached to the buildings, to the land, or attached to other equipment which is permanently attached to land or buildings. Our law defines "real property" as:

"1. Land;

"2. That which is affixed to land;

"3. That which is incidental or appurtenant to land; and

"4. That which is immovable by law."

Sec. 47-01-03, N.D.C.C.

"Fixtures" are defined by Section 47–01–05, North Dakota Century Code, as:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

The Municipal Industrial Development Act of 1955, as amended, being Chapter 40–57 of the North Dakota Century Code, defines a "project" for which a city may issue revenue bonds as:

" * * * any real property, buildings and improvements on real property or the buildings thereon, used or useful, in connection with revenue producing enterprises, or any combination of two or more such enterprises, engaged, or to be engaged, in:

"1. Assembling, fabricating, manufacturing, mixing, or processing of any agricultural, mineral, or manufactured products, or any combination thereof:

"2. Storing, warehousing, distributing, or selling any products of agriculture, mining, or manufacture. * * *" Sec. 40–57–02, N.D.C.C.

The trial court concluded that the "project" in this case included the land, the buildings, and the major items of equipment useful for sugar beet processing, connected to each other by pipes or conveyers providing a continuous processing procedure, affixed to foundations or structural members with bolts or in another permanent manner, and not readily removable without dismantling of equipment or damage to the building in which it is located; that the "project" also included such equipment as scales, hoppers, flumes, and conveyers permanently fixed to foundations although situated outside the buildings.

The court further concluded that such "project" did not include laboratory equipment not attached to the buildings, even though used solely in connection with sugar beet processing, nor wheel or track vehicles or equipment necessary to be used on the premises for transportation of beets and by-products thereof, but capable of being removed from the premises.

We hereby approve the court's conclusion as to the meaning of a "project" which may be acquired by issuance of revenue bonds, and concur that the proceeds of such bonds cannot be used to acquire equipment which is not affixed to the land or to buildings on the land, even though such equipment is used in connection with sugar beet processing.

The appellant next contends that the proposed lease agreement and contract between the City and the defendant Southern Red River Valley Sugarbeet Corporation violates the Act in that the corporation to which the municipality is leasing the project has no resources with which to either build or operate the plant, and that such corporation has had no experience in operating a sugar beet processing plant; that the contract and lease is further in violation of the Act in that the lessee is specifically authorized in the lease to sublease, and that the lessee intends to sublease the project.

This argument might be one that could have been addressed to the city council in an attempt to persuade it not to lease to the sugar beet corporation, but it is not a legal argument for the court to consider in passing on the validity of the proposed action of the municipality under the Act. Nowhere in the Act is there any provision which would require a lessee to show a certain financial rating. Municipal officials who are charged under the provisions of the Act with the duty of financing the sugar beet processing plant should be given credit for some common sense. It was impossible for the Legislative Assembly to set forth in detail in the law what should and

what should not be included in a contract with the lessee in such a project, since the Legislature could not possibly foresee all of the problems which might arise when a municipality, in the public interest and for the general welfare, undertakes to assist in the establishment of an industrial plant. The bond market and the ability of the municipality to sell its revenue bonds will of necessity force the municipality to demand favorable terms in its contract with the proposed lessee. This is true especially in view of the clause in the Act which provides:

"Revenue bonds issued under this chapter shall not be payable from nor charged upon any funds other than the revenue pledged to the payment thereof, nor shall the municipality issuing the same be subject to any liability thereon. * * *" Sec. 40–57–15, N.D.C.C.

The same section then goes on to provide:

"Each bond under this chapter shall recite in substance that the bond, including interest thereon, is payable solely from the revenue pledged to the payment thereof, except that such bond may be secured by a mortgage or other encumbrance on the project, or portion thereof, as authorized in this chapter, and that the bond does not constitute a debt of the municipality within the meaning of any constitutional or statutory limitation."

The challenge to the proposed lease on the ground that the lessee has no resources with which to build or to operate the plant is without merit. Some may regard a lease with a lessee who is without resources as extremely foolish, but it nevertheless is perfectly legal.

■ As to the matter of subleasing and the contention of the appellant that an attempt to sublease makes the lease and contract invalid, the record specifically discloses that the lessee has already made arrangements with North American Sugar Company, a corporation engaged in the refining and manufacturing of sugar, and with Archer Daniels Midland Company, which handles and processes agricultural products, for such sublease. Generally, in the absence of statutory or contractual restrictions, a lessee may assign or sublet the term of his lease. 51 C.J.S. Landlord and Tenant § 31, p. 538; 32 Am.Jur., "Landlord and Tenant," Sec. 394, p. 332.

■ Thus the lessee, Southern Red River Valley Sugarbeet Corporation, would have the right to sublet, since there is no provision in its proposed contract with the municipality against subletting. There is no statutory provision in the Act which prohibits subletting. We therefore believe the proposal to sublet is perfectly valid under the law. Whether such provision is prudent on the part of the municipality and whether the municipality, under such circumstances, should enter into a lease with a corporation which in advance informs it that it intends to sublease, is not a legal question.

Having disposed of all of the issues raised by the appellant questioning the validity of the proposed lease and contract between the municipality and the lessee, Southern Red River Valley Sugarbeet Corporation, we now turn our attention to the contention that Chapter 40–57, North Dakota Century Code, as amended, and the proposed development of a sugar beet refining plant under its provisions, violate the Fourteenth Amendment to the Federal Constitution and further violate Sections 13 and 185 of the North Dakota Constitution.

■ We have held repeatedly that every legislative enactment is presumed to be constitutional and will be upheld unless such enactment is manifestly in violation of either the Federal or the State constitutions. O'Laughlin v. Carlson, 30 N.D. 213, 152 N.W. 675; International Printing Pressmen and Assistants Union of North America v. Meier, (N.D.), 115 N.W.2d 18; City of Fargo v. Annexation Review Commis-

sion of Cass County (N.D.), 123 N.W.2d 281.

■ In construing a statute to determine its constitutionality, the courts will adopt every reasonable presumption in favor of its validity. Stark v. City of Jamestown, 76 N.D. 422, 37 N.W.2d 516; Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849.

The appellant has challenged the constitutionality of Chapter 40–57, North Dakota Century Code, on the ground that it violates the Fourteenth Amendment to the United States Constitution and Section 13 of the State Constitution. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law," while Section 13 of the North Dakota Constitution reads, in part, that no person shall "be deprived of life, liberty or property without due process of law." The appellant's challenge to the law before us is that the Act is for a private, rather than for a public, purpose and therefore takes private property without due process of law.

■ This court considered the question of public purpose in the early case of Green v. Frazier, 44 N.D. 395, 176 N.W. 11, affirmed in 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878. The Green case involved statutes enacted by the Legislative Assembly which provided for the creation and establishment of certain State utilities, industries, enterprises, and business projects. This court, in the Green decision, described "public purpose" in the following manner:

"A public purpose or public business has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division, * * *."

We believe the project in this case comes within that definition. Appellant has not shown that the Act in any way violates the due-process provisions of the Federal or State constitutions, or that it deprives him or any other person of property without due process.

We believe, therefore, that the contention of the appellant that Chapter 40–57 is in violation of the Fourteenth Amendment to the United States Constitution and in violation of Section 13 of the North Dakota Constitution is without any merit.

Having determined that Chapter 40–57 does not take property without due process and therefore it is not in violation of the Fourteenth Amendment to the Federal Constitution or of Section 13 of the North Dakota Constitution, we now come to a consideration of the plaintiff's contention that the Act violates Section 185 of the North Dakota Constitution. That section, among other things, empowers the State and any county or city to engage in any industry, enterprise, or business, except the traffic of liquor, and then goes on to provide:

"* * * but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation."

■ Thus Section 185 authorizes the State and any county or city to engage directly in any industry, enterprise, or business except the business of engaging in the traffic of liquor, subject to the restrictions of the due-process clause of the Federal Constitution.

■ Section 185 does not prohibit the making of loans or giving of credit or making donations in connection with a city's engaging in any industry, enterprise, or business except engaging in liquor traffic. What it does prohibit is for a city "otherwise" to make loans or give its credit or make donations. In other words, making

loans or giving credit may be done in connection with the city's engaging in any permissible industry, enterprise, or business, but not otherwise.

As we said in Northwestern Bell Telephone Co. v. Wentz (N.D.), 103 N.W.2d 245, it is common knowledge that no one can successfully engage in an industry, enterprise, or business without in some manner being involved in lending, the giving of credit, or the making of donations. Surely the framers of Section 185 of our Constitution would not have granted to the State and to any county or city the power to engage in industry, enterprise, or business and then have denied them the right to make loans or give credit in connection with the operation of such industry, enterprise, or business.

 In the case before us, the resolution of the City provides that the revenue bonds issued for such project shall not be payable from nor be a charge upon any funds other than the revenue of such project. But the City, in effect, is lending its name and its credit by contracting to perform all things necessary to enforce the provisions of the lease; that it will segregate all rents charged and collected and keep them in separate accounts and will use such rents to pay principal and interest on such bonds; and further pledges that the City will keep an accurate account and record of the entire transaction. Assuming, for the sake of argument, that this constitutes a loan or, in any event, the giving of credit, is that a violation of Section 185 of our Constitution? We think not. What the City is doing is engaging in an enterprise, the enterprise of leasing a sugar processing plant. The City is specifically authorized and empowered to engage in any enterprise under the provisions of Section 185. And, in connection with its operations in engaging in this enterprise, the City is specifically authorized by Section 185 to loan or give its credit. The prohibition is against "otherwise" loaning or giving its credit or making donations to or in aid of any individual, association, or corporation.

Thus Chapter 40–57 does not violate the constitutional provision prohibiting the making of loans or extending of credit to any individual, association, or corporation, since the municipality—if there is an extension of credit involved in the actions of the City under this chapter—is, in fact, engaging in an enterprise which is specifically authorized under Section 185.

For all of the reasons set forth in this opinion, the judgment of the district court is affirmed.

MORRIS, C. J., and ERICKSTAD, BURKE and TEIGEN, JJ., concur.