Harold J. KELLY, on behalf of himself and all other taxpayers of the State of North Dakota, Plaintiff and Appellant,

v.

William L. GUY, Helgi Johanneson and Math Dahl, as the Industrial Commission of the State of North Dakota, and Robert Huey, Director of Economic Development, Defendants and Respondents.

No. 8191.

Supreme Court of North Dakota.

March 19, 1965.

Duffy & Haugland, Devils Lake, for appellant.

Paul M. Sand, First Asst. Atty. Gen., Bismarck, for respondents.

EUGENE A. BURDICK, District Judge.

In this action the Plaintiff, in behalf of himself and all other taxpayers of the State of North Dakota, seeks to enjoin permanently the members of the State Industrial Commission and the Director of Economic Development from making an industrial development loan pursuant to the provisions of Article 76 of the Constitution and Chapter 206 of the 1963 Session Laws of North Dakota.

The case was submitted to the trial court upon an agreed statement of facts, the following of which are material.

Minnekota Power Co-operatives, Inc. of Grand Forks, North Dakota filed an application with the Economic Development Commission of the State of North Dakota to borrow $7,000. for the purpose of extending the transmission of power generated

from the use of lignite coal, pursuant to the provision of Chapter 206 of the 1963 Session Laws of North Dakota. On July 9, 1963 the Economic Development Commission, of which the appellant is a member, approved this application in his absence.

Chapter 206 of the 1963 Session Laws, hereinafter referred to as the Act, appropriated fifty thousand dollars as a continuing appropriation to the State Industrial Commission under the provisions of the Act for the purpose of making loans of the nature sought by Minnekota Power Co-operative, Inc. No other application has been made for any part of the funds appropriated.

Under the provisions of the Act, if the State Industrial Commission finds that the approved loan application has been filed and processed in the required manner and the proposed loan agreement is in proper legal form and the amount to be disbursed does not exceed the funds appropriated for that purpose, it shall authorize the execution of the loan agreement with the applicant by the director of the economic development on behalf of the state.

The State Industrial Commission has formally approved the loan application and is in the process of determining the legal rate of interest and other provisions of the bonds. Unless restrained from so doing, the State Industrial Commission will authorize the execution of the loan agreement and the Director of Economic Development will loan the funds of the state in accordance with the loan application and the provisions of the Act.

Each of the parties moved for summary judgment. The trial court granted the defendants' motion and dismissed the case. The case is before us on appeal by the plaintiff from the summary judgment of dismissal and upon a cross-appeal by the defendants from a provision of the judgment holding that the Act is subject to the limitations of Section 182 of the North Dakota Constitution.

The plaintiff contends that the Act and Article 76 of the North Dakota Constitution violate the Fourteenth Amendment to the United States Constitution. The plaintiff reasons that the proposed loan of public funds derived from taxation is not a public purpose and therefore deprives him of property without due process of law.

Article 76 of the North Dakota Constitution reads as follows:

"Section 1. Notwithstanding any other provision in the constitution, and for the purpose of promoting the economic growth of the state, the development of its natural resources, and the prosperity and welfare of its people, the state may issue bonds and use the proceeds thereof to make loans to privately or cooperatively owned enterprises to plan, construct, acquire, equip, improve, and extend facilities for converting natural resources into power and generating and transmitting such power, and to acquire real and personal property and water and mineral rights needed for such facilities.

"Section 2. The state may issue general obligation bonds for this purpose to an amount which, with all outstanding general obligation bonds, less the amount of all money on hand and taxes in process of collection which are appropriated for their payment, will not exceed five per cent of the full and true value of all of the taxable property in the state, to be ascertained by the last assessment made for state and county purposes: but nothing herein shall increase or diminish the limitations established by other provisions of the constitution on the amount of bonds therein authorized to be issued.

"Section 3. The state may also issue revenue bonds for the purpose of providing part or all of the funds required for any project undertaken under section 1, payable solely from sums realized from payments of principal and interest on money loaned for such

project, and from other similar projects if so determined by the legislature, and from the liquidation of security given for such payments. Revenue bonds issued for any project shall not exceed the cost thereof, including all expenses reasonably incurred to complete and finance the project, but shall not be subject to any other limitation of amount.

"Section 4. The full faith and credit of the state shall be pledged for the prompt and full payment of all bonds issued under section 2. Its obligation with respect to bonds issued under section 3 shall be limited to the prompt and full performance of such covenants as the legislature may authorize to be made respecting the enforcing of the provisions of underlying loan agreements and the segregation, accounting, and application of bond proceeds and of loan payments and other security pledged for the payment of the bonds. All bonds authorized by sections 1 to 3, inclusive, shall mature within forty years from their respective dates of issue, but may be refunded at or before maturity in such manner and for such term and upon such conditions as the legislature may direct. Any such bonds may, but need not be, secured by mortgage upon real or personal property acquired with the proceeds of the same or any other issue of general obligation or revenue bonds, or upon other property mortgaged by the debtor. Pledges of revenues and mortgages of property securing bonds of any issue may be prior or subordinate to or on a parity with pledges and mortgages securing any other issue of general obligation or revenue bonds, as determined by the legislature from time to time in conformity with any provisions made for the security of outstanding bonds.

"Section 5. The legislature shall pass such laws as are appropriate to implement this amendment.

"Section 6. If any section of this amendment, or any part of a section, or any application thereof to particular circumstances should be held invalid for any reason, such invalidity shall not affect the validity of all remaining provisions of this amendment which may be given effect without that which is declared invalid, as applied to any circumstances; and for this purpose all sections and parts of sections and applications thereof are declared to be severable."

■ This court has already held that Section 185 of the North Dakota Constitution authorizes the state and any county or city to engage in any industry, enterprise, or business, except the business of dealing in intoxicating liquor. Gripentrog v. City of Wahpeton, N.D., 126 N.W.2d 230. In Gripentrog we reviewed the "public purpose" test applied by the United States Supreme Court in determining whether a particular use of public funds derived from taxation offended the Fourteenth Amendment to the United States Constitution. It seems clear that if the state were to engage directly in the business of transmitting power generated by lignite generation plants as a means of making electric power available to the consuming public, the public purpose test would be met.

The making of a loan to further the same purpose, i.e. the generation of electric energy and distribution of the same to the consuming public attains the same goal. This becomes evident in a case where a loan made by the state is defaulted and the state acquires the properties upon foreclosure of its security. If operation of the transmission facility is a public purpose when conducted by the state after acquisition upon foreclosure of the security, surely the making of a loan to construct and operate the facility prior to foreclosure serves the same public purpose.

The legislative intent, embraced within Section 1 of the Act, is expressed as follows:

"§ 1. Declaration and Finding of Public Purpose.) The legislative assembly of the state of North Dakota hereby declares and finds that it is and has been its purpose in preparing and adopting the provisions of this Act to promote the economic growth of the state, the development of its natural resources, and the prosperity and welfare of its people, by providing a source of low cost power in the state which will aid the establishment of additional industrial plants and activities within North Dakota, increasing production of wealth and the amount of employment, particularly during those seasons when employment in farming and ranching is slack and preventing a loss of population and promoting an increase in growth of population."

The safeguards provided for throughout the Act to insure the application of the proceeds of the loan to the purposes intended are unique in preventing the making of a loan for an unauthorized purpose. The Act provides for many supervisory controls to insure that the public objectives of the loan are realized.

■■ The court also takes judicial notice of the fact that the vast lignite coal resources underlying the western half of this state have attracted relatively meagre amounts of private capital during the first seventy-five years of statehood. Current enterprise in the development of lignite coal as a major natural resource in the generation of electrical energy is largely dependent on loans made to cooperative electric companies by the federal government. The development of a major natural resource of the state for the common good where adequate amounts of private capital are lacking would seem to be the highest order of public purpose. The electorate in

adopting Article 76 of the North Dakota Constitution must have come to the same conclusion. The application under consideration clearly meets the public purpose test. For a general discussion of the subject, see 42 Am.Jur., Public Funds, Sec. 57 and 81 C.J.S. States § 133.

■ The plaintiff further contends that the Act and Article 76 of the North Dakota Constitution are controlled by Section 185 of the North Dakota Constitution which prohibits the state and any of its political subdivisions from loaning or giving its credit to or in aid of any individual, association or corporation, except for reasonable support of the poor. This argument fails for the reason that the Article 76, pursuant to which the Act in question was enacted, was approved[1] subsequent to Section 185, and thus creates an additional exception to the lending power.

The plaintiff further contends that the Act and Article 76 of the North Dakota Constitution are controlled by Section 182 of the North Dakota Constitution with respect to the bonding limit of the state. Section 182 of the North Dakota Constitution provides as follows:

"Section 182. The state may issue or guarantee the payment of bonds, provided that all bonds in excess of two million dollars shall be secured by first mortgage upon real estate in amounts not to exceed one-half of its value; or upon real and personal property of state owned utilities, enterprises or industries, in amounts not exceeding its value, and provided further, that the state shall not issue or guarantee bonds upon property of state owned utilities, enterprises or industries in excess of ten million dollars.

"No further indebtedness shall be incurred by the state unless evidenced by a bond issue, which shall be authorized by law for certain purposes to be clearly defined. Every law authorizing a

1. Approved at General Election November 6, 1962.

bond issue shall provide for levying an annual tax, or make other provision, sufficient to pay the interest semi-annually, and the principal within thirty years from the date of the issue of such bonds and shall specially appropriate the proceeds of such tax, or of such other provisions to the payment of said principal and interest, and such appropriation shall not be repealed nor the tax or other provisions discontinued until such debt, both principal and interest, shall have been paid. No debt in excess of the limit named herein shall be incurred except for the purpose of repelling invasion, suppressing insurrection, defending the state in time of war or to provide for the public defense in case of threatened hostilities."

■ It is argued by the plaintiff that the clause, "but nothing herein shall increase or diminish the limitations established by other provisions of the constitution on the amount of bonds therein authorized to be issued" constitutes a direct recognition of the limits provided for in Section 182. The trial court agreed with the plaintiff in this one respect. This argument of counsel ignores the significance of the key words "other" and "therein" as used in the clause above quoted. The clause quoted is merely a disclaimer of the effect of Article 76 with respect to bonds issued pursuant to *other* (emphasis supplied) provisions of the constitution on the amount of bonds *therein* (emphasis supplied) authorized to be issued." With respect to bonds issued *pursuant to Article 76*, the Article provides its own special limitations. These limitations, being later in adoption [2] constitute exceptions to those provided for by Section 182 and control in the case at bar.

■ The plaintiff further contends that the Act violates Section 22 of the North Dakota Constitution in providing an unreasonably short period of thirty days within which an action must be brought to test the validity of any bonds issued or taxes levied in support of the same. The plaintiff having commenced his action within the time specified by the Act is not aggrieved by the limitation of which he complains. and, therefore, cannot challenge its constitutionality in this regard. A party who is not harmfully affected by a particular feature of a statute alleged to be unconstitutional may not urge the unconstitutionality of the statute. Tooz v. State, 76 N.D. 599, 38 N.W.2d 285.

The plaintiff further contends that the Act violates Section 61 of the North Dakota Constitution which reads as follows:

"Section 61. No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed."

The plaintiff argues that the title of the Act embraces more than one subject. The title of the Act reads as follows:

"To implement the provisions of the initiated constitutional amendment approved at the general election of November 6, 1962, authorizing the state of North Dakota to issue its bonds and to use the proceeds thereof to make loans to privately or cooperatively owned enterprises for facilities to convert North Dakota natural resources into low cost power and to generate and transmit such low cost power; providing for the filing, processing and evaluation of loan applications by the economic development commission, the setting of investigation and inspection fees and the appropriation and expenditure thereof, and the approval of loan applications by the economic development commission; for the appropriation of funds to the state industrial commission for disbursement in the making of such loans, the issuance of bonds by the industrial commission as agent of the

2. Section 182 was adopted as Article 42 March 18, 1924.

state, and the security and tax levy and use of other funds for the payment of state bonds; for the investment of sinking fund moneys and bond proceeds; and for the limitations of actions questioning the validity of bonds."

Counsel's argument could hardly be less tenable. We have no difficulty in holding that the title of the Act embraces but a single subject, viz.: "To implement the provisions of the initiated constitutional amendment approved at the general election of November 6, 1962, authorizing the state of North Dakota to issue its bonds and to use the proceeds thereof to make loans to privately or cooperatively owned enterprises for facilities to convert North Dakota natural resources into low cost power and to generate and transmit such low cost power." All other provisions of the title to this Act are germane to its fundamental subject matter and expressed purposes. Lapland v. Stearns, 79 N.D. 62, 54 N.W.2d 748.

The judgment of the district court is modified so as to delete the determination that Chapter 206 of the 1963 Session Laws is governed by and is subject to the limitations of Section 182 of the North Dakota Constitution, and as modified it is affirmed.

BURKE, C. J., and TEIGEN and ERICKSTAD, JJ., concur.

KNUDSON, J., not having been a member of the Court when the case was submitted, did not participate.