Filed 7/12/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 148

Robert Hale, Plaintiff and Appellant

v.

State of North Dakota; Jack Dalrymple, 

in his official capacity as Governor 

of North Dakota; Shane Goettle, Director, 

in his official capacity as Director 

of the Department of Commerce; 

North Dakota Department of Commerce;

the Minot Area Development Corporation; 

the Minot City Council (Curt Zimbelman,

Larry E. Frey, David F. Lehner, Bob Miller, 

Hardy Lieberg, Dean Frantsvog, Jim Hatlelid, 

Chuck Barnes, Tim Greenheck, Scott Knudsvig, 

Mark Jantzer, Blake Krabseth, Ron Boen, 

Lisa Olson, each in his or her official 

capacities); and the City of Minot, Defendants and Appellees

No. 20110146

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Lynn M. Boughey, Box 836, Bismarck, N.D. 58502-0836, for plaintiff and appellant.

Douglas A. Bahr, Solicitor General, Office of Attorney General, 500 North 9th Street, Bismarck, N.D. 58501-4509, for defendants and appellees State of North Dakota; Jack Dalrymple, in his official capacity as Governor of North Dakota; Shane Goettle, Director, in his official capacity as Director of the Department of Commerce and North Dakota Department of Commerce.

Bryan L. Van Grinsven, P.O. Box 998, Minot, N.D. 58702-0998, for defendant and appellee the Minot Area Development Corporation.

Randall J. Bakke, P.O. Box 460, Bismarck, N.D. 58502-0460, for defendants and appellees the Minot City Council and the City of Minot.

Hale v. State of North Dakota

No. 20110146

Crothers, Justice.

[¶1] 
Robert Hale appeals from a district court order dismissing his action against the State of North Dakota, the Governor of North Dakota in his official capacity, the Director of the Department of Commerce in his official capacity and the Department of Commerce (“State entities”); the Minot City Council members in their official capacities and the City of Minot “(Minot defendants”); and 
the Minot Area Development Corporation (“MADC”) for a declaration that the state and the federal constitutions prohibit the disbursement of public funds to private persons, associations, or corporations for economic development.  Hale primarily argues the “gift clause” provisions of N.D. Const. art. X, § 18 prohibit the State entities and the Minot defendants from using public funds to loan, give credit or make donations to individuals, associations, or corporations for economic development.  We conclude statutes authorizing the State entities and the Minot defendants to implement economic development programs constitute an enterprise for a public purpose under N.D. Const. art. X, § 18 and are not unconstitutional.  We affirm.  

I

[¶2] In August 2010, Hale brought suit alleging more than sixty state statutes authorizing those entities to implement economic development programs violate N.D. Const. art. X, § 18 and the due process, equal protection, and takings provisions of the state and the federal constitutions.  Hale claimed those statutes violated N.D. Const. art. X, § 18 because they permitted using public funds to make loans, give credit, or make donations to private persons, associations, or corporations for reasons other than the support of the poor.  Hale sought (1) a declaration that N.D. Const. art. X, § 18 prohibits direct and indirect disbursements of public funds, loans, grants, loan guarantees, and giving of credit or gifts to private persons, associations and corporations for reasons other than the support of the poor; (2) a declaration that the giving by grant, credit, or loan to corporations as part of an economic development program constitutes an improper gift or donation to individuals, associations or corporations because the gift or donation was not for the benefit of the poor; (3) a declaration that the state and the city economic development programs lack accountability; (4) a declaration that more than sixty state statutes violate the gift clause; (5) an injunction prohibiting the defendants from disbursing public funds to private entities for economic development; (6) an order making taxpayers whole for funds improperly spent for economic development since 1990; (7) an order awarding Hale sufficient attorney fees “to discourage the state and its political sub-divisions from enacting such schemes in the future”; and (8) reasonable attorney fees under 42 U.S.C. § 1988.  

[¶3] One day after filing the complaint and before the defendants answered, Hale moved for what he called “declaratory judgment.”  Hale’s motion really was one for summary judgment seeking the relief requested in his complaint, claiming it was undisputed the defendants were improperly loaning money, giving credit, or making donations to individuals, associations and corporations in a manner that did not constitute reasonable support of the poor.   

[¶4] The State entities opposed Hale’s motion and moved to dismiss his complaint for failure to state a claim upon which relief could be granted.  
See
 N.D.R.Civ.P. 12(b)(6).  The State entities argued
 the statutes authorizing the State to engage in economic development programs were constitutional:

“There is no question the North Dakota Legislative Assembly has authorized the distribution of public funds for economic development.  
See, e.g.
, N.D.C.C. § 54-60-02 (creating Division of Economic Development and Finance); N.D.C.C. § 54-34.3-04(3), (4) (stating the director of the Division of Economic Development and Finance is responsible to develop, implement, and coordinate a comprehensive program of economic development); N.D.C.C. ch. 4-

14.1 (explaining purpose and authority of the agricultural fuel tax fund and the Agricultural Products Utilization Commission); N.D.C.C. § 10-

30.5-02 (explaining purposes of North Dakota Development Fund); N.D.C.C. ch. 17-02 (providing for ethanol production incentives).  In accordance with this statutory authority, the State, typically through the Department of Commerce, has and does disburse funds, provide grants, and provide loans to private persons, associations, or corporations in conjunction with economic development programs administered by it.  The State, through the North Dakota Department of Commerce, has also taken equity positions in companies in conjunction with economic development programs administered by it.  The question is not whether those activities are authorized or occur, but whether the authorizing statutes violate [N.D. Const. art. X, §] 18.  As demonstrated below, the Legislative Assembly may authorize the distribution of public funds for economic development.  Accordingly, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.” 

[¶5] MADC moved to dismiss Hale’s complaint for failure to state a claim,  asserting N.D. Const. art. X, § 18 applies only to the State and its political subdivisions and does not apply to MADC because it is a private non-profit entity.  MADC also asserted that if it is an agent of the City of Minot, it is not a necessary party because the alleged principal, the City of Minot, is a named defendant and MADC’s alleged liability is no different than Minot’s alleged liability.  

[¶6] The Minot defendants answered Hale’s complaint, opposed his motion for declaratory relief, and moved for summary judgment, claiming no disputed issues of material fact existed regarding the constitutionality of its economic development activities.  The Minot defendants submitted an affidavit from its finance director, explaining Minot’s relationship with MADC and its procedure for disbursing funds for economic development:

“2. The Minot Area Growth through Investment and Cooperation (MAGIC) Fund is financed by 40% of a 1% sales tax charged by the City of Minot. . . .

“3. . . .  The MAGIC Fund provides incentives to businesses that desire to expand or locate in the greater Minot trade area.  The primary purposes of the MAGIC Fund are to create new jobs, increase capital investment, improve the entrepreneurial climate of the region, and generally expand the primary sector financial base of the area.  In addition, the MAGIC Fund may be used for workforce development to attract workers to meet workforce deficiencies in the region.

“4. The City of Minot enters from time to time into a Services Agreement with the Minot Area Development Corporation (hereinafter “MADC”) for the purposes of engaging MADC’s services, expertise, and resources.

“5. . . . .  Under this Services Agreement, MADC is obliged to, among other things, market and promote the City of Minot with respect to employment and business opportunity, coordinate efforts in this regard with Minot and various other entities, recruit and prospect new business, and present qualified applicants to the MAGIC Fund Committee.

“6. The Minot City Council must give its approval to the Services Agreement with MADC prior to its being signed by the Mayor of the City of Minot. . . . 

“7. The MADC and/or other applicable organizations make recommendations to the MAGIC Fund Committee to provide economic incentives to certain businesses, if appropriate.  The MAGIC Fund Committee then makes a recommendation to the Minot City Council to approve or deny the request for funds.  The Minot City Council gives final approval or denial of all applications.  MAGIC Fund assistance is provided to businesses in the form of various financial arrangements.  These financial arrangements include but are not limited to loans, grants, and tax deferments.”

[¶7] The district court granted the motions by the State entities and MADC to dismiss under N.D.R.Civ.P. 12(b)(vi) and the motion by the Minot defendants for summary judgment under N.D.R.Civ.P. 56.  The court concluded statutes authorizing the State and governmental subdivisions to disburse public funds to private persons, associations or corporations for economic development programs constitute an enterprise for a public purpose under N.D. Const. art. X, § 18 and were not facially unconstitutional.  In addressing Hale’s claims that the defendants’ economic development activities were unconstitutional, the court concluded the Minot defendants’ implementation of the MAGIC Fund was an enterprise and Hale failed to raise a material factual dispute regarding his claim that the MAGIC Fund was not used for a public purpose.  The court said even if the Minot defendants provided loans and grants for economic development “without strings” attached and with no expectation of repayment, the constitutional provision does not prohibit the Minot defendants from providing loans, giving credit or making donations for economic development.  The court rejected Hale’s claims the State entities’ economic development activities were unconstitutional, concluding he failed to support his claims with sufficient citation or argument.  The court also decided Hale’s conclusory allegations regarding takings clause and equal protection violations were unsupported by relevant precedent or persuasive reasoning and were fatally deficient as a matter of law.  The court found Hale’s claims against MADC were the same as his claims against the Minot defendants and should be summarily dismissed.  The court alternatively stated the constitutional prohibitions in N.D. Const. art. X, § 18 did not apply to MADC.  

II

[¶8] Simultaneously with causing a “notice of entry of final order” to be served on the parties, Hale appealed from the district court’s memorandum opinion and order dismissing his action.  Memorandum opinions and orders generally are not appealable under N.D.C.C. § 28-27-02.  
American Ins. Co. v. Midwest Motor Express, Inc.
, 554 N.W.2d 182, 183 n.1 (N.D. 1996).  However, an appeal may be taken from a memorandum decision if “[it] also contains a final order or judgment . . . consistent with the memorandum decision,” or if the court’s decision indicates it was intended to be a final order of the court.  
Id.
  The court’s memorandum decision disposed of all of the parties’ claims, and we treat it as the court’s final order.  We therefore conclude we have jurisdiction to hear Hale’s appeal. 

III

[¶9] Hale argues the district court erred in granting the defendants’ motions to dismiss and for summary judgment and in denying his motion for a summary judgment because statutes authorizing the State entities and the Minot defendants to implement economic development programs 
violate N.D. Const. art X, § 18 as a matter of law.  Hale argues statutes authorizing economic development programs are unconstitutional on their face and even if this Court rejects his facial challenge to those statutes, factual disputes exist about the constitutionality of the defendants’ economic development activities because “there is a lack of accountability, preferential treatment, and taking of taxpayer money and literally giving it away to corporations, including some of the wealthiest corporations in the world.”  He argues a governmental entity must be directly engaged in a business enterprise to satisfy the provisions of N.D. Const. art. X, § 18 authorizing the entity to make loans, to give its credit, or to make donations to any individual, association or corporation.  Hale further claims the district court erred in granting the motions to dismiss his complaint, because the court failed to take the allegations and inferences in his complaint as true and erred in not providing him an evidentiary hearing to determine the relevant disputed facts.  

[¶10] The State responds the district court properly dismissed Hale’s facial constitutional challenge to economic development statutes under this Court’s existing precedent and properly dismissed his claims about the constitutionality of the State’s economic development activities because the conclusory allegations in his complaint failed to adequately plead a challenge to those activities.  The Minot defendants argue Hale abandoned his claims against them and the court properly granted them summary judgment.  MADC also claims Hale abandoned his claims against it and the court properly dismissed his claims against it.   

[¶11] Hale argues the district court erred in not granting his motion for summary judgment.  The court’s ruling encompasses his claims against the Minot defendants and MADC, and we decline to hold he has abandoned his arguments against those entities.  

[¶12] Although the issues identified by Hale broadly state the district court erred in dismissing his action and we hold he has not abandoned his arguments against any party, our review is nevertheless guided by several fundamental precepts.  “A party must do more than submit bare assertions to adequately raise constitutional issues.”  
Riemers v. O’Halloran
, 2004 ND 79, ¶ 6, 678 N.W.2d 547.  “We have said ‘a party waives an issue by not providing supporting argument’ and, ‘without supportive reasoning or citations to relevant authorities, an argument is without merit.’”  
Id.
 (quoting 
Kautzman v. Kautzman
, 2003 ND 140, ¶ 15, 668 N.W.2d 59).  “We have also said ‘a party making a constitutional claim must provide persuasive authority and reasoning.’”  
Riemers
, at ¶ 6 (quoting 
Kautzman
, at ¶ 15).  “We have repeatedly stated we are not ferrets and we ‘will not consider an argument that is not adequately articulated, supported, and briefed.’”  
Holden v. Holden
, 2007 ND 29, ¶ 7, 728 N.W.2d 312 (quoting 
State v. Haibeck
, 2006 ND 100, ¶ 9, 714 N.W.2d 52). 

[¶13] We consider Hale’s claims with those caveats in mind and in the procedural context of the district court’s decision to dismiss under N.D.R.Civ.P. 12(b)(vi), now denominated as N.D.R.Civ.P. 12(b)(6), and N.D.R.Civ.P. 56.  A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(vi) tests “the legal sufficiency of the statement of the claim presented in the complaint.”  
Ziegelmann v. DaimlerChrysler Corp.
, 2002 ND 134, ¶ 5, 649 N.W.2d 556.  On appeal from a dismissal under N.D.R.Civ.P. 12(b)(vi), “we construe the complaint in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint.”  
Ziegelmann
, at ¶ 5.  Under N.D.R.Civ.P. 12(b)(vi), a “complaint should not be dismissed unless ‘it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.’”  
Ziegelmann
, at ¶ 5 (quoting 
Lang v. Schafer
, 2000 ND 2, ¶ 7, 603 N.W.2d 904).  “We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot ‘discern a potential for proof to support it.’”  
Ziegelmann
, at ¶ 5 (quoting 
Towne v. Dinius
, 1997 ND 125, ¶ 7, 565 N.W.2d 762).

[¶14] Summary judgment under N.D.R.Civ.P. 56(c) is a procedural device for the prompt and expeditious disposition of any action without a trial “if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result.”  
Duemeland v. Norback
, 2003 ND 1, ¶ 8, 655 N.W.2d 76. Whether a district court properly grants a summary judgment motion “is a question of law that we review de novo on the record.”  
Trinity Hosps. v. Mattson
, 2006 ND 231, ¶ 10, 723 N.W.2d 684. 

[¶15] “The party moving for summary judgment must show . . . no genuine issues of material fact [exist] and the case is appropriate for judgment as a matter of law.”  
Mattson
, 2006 ND 231, ¶ 10, 723 N.W.2d 684  “In determining whether summary judgment was appropriately granted, we . . . view the evidence in the light most favorable to the party opposing the motion,” giving that party “the benefit of all favorable inferences which can reasonably be drawn from the record.”  
Hasper v. Center Mut. Ins. Co.
, 2006 ND 220, ¶ 5, 723 N.W.2d 409. However, “[u]nder N.D.R.Civ.P. 56, if the movant meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact.”  
Riemers v. Grand Forks Herald
, 2004 ND 192, ¶ 4
, 688 N.W.2d 167.

A

[¶16] In that context, we consider Hale’s arguments about the “gift clause” provisions in N.D. Const. art. X, § 18, which at all times material to this case provided: 

“The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by article XX of the constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation.”

[¶17] In 
Haugland v. City of Bismarck
, 2012 ND 123, ¶¶ 22-40, we recently considered a constitutional challenge under N.D. Const. art. X, § 18 to a municipality’s use of tax increment financing to fund urban renewal projects under N.D.C.C. ch. 40-58.  We said “statutory enactments are presumed to be constitutional unless the statutory scheme is clearly shown to contravene the state or federal constitution.”  
Haugland
, at ¶ 23.  In describing principles for assessing the constitutionality of statutory provisions under the state constitution, we also explained “the ‘state constitution is not a grant but a limitation on legislative power, so that the legislature may enact any law not expressly or inferentially prohibited’ by the state or federal constitution.”  
Id.
 (quoting 
Northwestern Bell Tel. Co. v. Wentz
, 103 N.W.2d 245, 252 (N.D. 1960)).

[¶18] In 
Haugland
, we outlined the historical development of the “gift clause” to its current language from a provision originally precluding the state and political subdivisions from making a loan, giving credit or making donations to any individual, association or corporation except for necessary support for the poor.  2012 ND 123, ¶¶ 26-28.  We discussed relevant cases construing the current language of the gift clause.  
Id.
 at ¶¶ 29-30 (discussing 
Wentz
, 103 N.W.2d 245 and 
Gripentrog v. City of Wahpeton
, 126 N.W.2d 230 (N.D. 1964)).  We also discussed 
Kelly v. Guy
, 133 N.W.2d 853 (N.D. 1965), and we said that case involved a federal constitutional challenge to a separate state constitutional provision under the due process clause of the Fourteenth Amendment to the United States Constitution.  
Haugland
, at ¶ 31.  We said 
Kelly
 decided a public purpose issue under the Fourteenth Amendment, but we explained 
Kelly
 “did not otherwise analyze a constitutional challenge to a statutory enactment under the current language of N.D. Const. art. X, § 18.”  
Haugland
, at ¶ 31.

[¶19] We said our decisions construing the current language of the gift clause authorize the state, any county or any city to “make loans, extend credit, or make donations when the entity is engaged in any industry, enterprise, or business, and ‘[t]he prohibition is against “otherwise” loaning or giving its credit or making donations to or in aid of any individual, association, or corporation.’”  
Haugland
, 2012 ND 123, ¶ 33 (quoting 
Gripentrog
, 126 N.W.2d at 238 and citing 
Wentz
, 103 N.W.2d at 253-54).  We construed the plain, ordinary and commonly understood meaning of the disjunctive phrase “engage in ‘any industry, enterprise, or business’” to give meaning to each term, and we held the term “enterprise” means “a project or undertaking that is especially difficult, complicated, or risky, or a systematic purposeful activity.”  
Haugland
, at ¶¶ 34-35.  Under “the commonly understood meaning of enterprise, a municipality’s implementation of an urban renewal plan under [N.D.C.C. ch. 40-58] by the duly-elected officials of a municipality constitutes a project or undertaking that is especially difficult, complicated, or risky, or a systematic purposeful activity within the meaning of” enterprise.  
Haugland
, at ¶ 35.  We thus held urban renewal under N.D.C.C. ch. 40-58 constitutes an “enterprise” under N.D. Const. art. X, § 18.  
Haugland
, at ¶ 35. 

[¶20] In 
Haugland
, we separately discussed “the interrelationship of N.D. Const. art. X, § 18, and a ‘public purpose’ analysis under the due process clause of the 14th Amendment.”  2012 ND 123, ¶¶ 37-40.  We explained the gift clause “incorporates restrictions of the due process clause of the federal constitution and requires the use of public funds derived from taxation to be for a public purpose.”  
Id.
 at ¶ 37.  
We said “a public purpose ‘has for its objective the promotion of public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political subdivision,’” and “‘where an appropriation of public funds is primarily for public purposes it is not necessarily rendered violative of constitutional provisions against gifts and loans of public credit by an incidental result which may be of private benefit.’”  
Id.
 at ¶ 37 (quoting 
Gripentrog
, 126 N.W.2d at 237 and 
Stutsman v. Arthur
, 73 N.D. 504, 518, 16 N.W.2d 449, 454 (1944)).  We held “the urban renewal provisions of N.D.C.C. ch. 40-58 satisfy a public purpose for a municipality to engage in an enterprise” under N.D. Const. art. X, § 18.  
Haugland
, at ¶ 40.

[¶21] Under 
Haugland
 and our prior decisions construing the current language of N.D. Const. art. X, § 18, the State, any county or any city may make loans, extend credit or make donations when the entity engages in any business, industry or enterprise for a public purpose.  Under that framework, the issue in this case is whether economic development statutes authorize the State entities and the Minot defendants to engage in an enterprise for a public purpose.

[¶22] Hale generally argues the defendants violated the gift clause by the “taking of taxpayer money and literally giving it away to businesses, persons, and associations.” He does not explain how any specific state statutes violate the gift clause; rather, his only reference to specific statutes provides:

“It is clear that the City of Minot and the State of North Dakota are providing loans to individuals, associations, and corporations through the MAGIC Fund and is [sic] awarding grants and allowing the forgiveness of loans; it has also become an owner of capital stock in an association or corporation.  Each grant or forgiveness of a loan constitutes a donation or gift that is not for the reasonable support of the poor.  The City of Minot is distributing such funds through its MAGIC Fund, under the authority of Chapter 40-57.4.  The State of North Dakota, primarily through the Commerce Department, is distributing such funds under the authority of Chapters 15-69, 54-34.3, 54-60, and 54-60.1, as will [sic] as other statutes.  It has also authorized counties to distribute funds through Chapter 11-11.1.” 

[¶23] The statutes cited by Hale authorize the State entities, cities and counties to implement economic development programs.  
See
 N.D.C.C. ch. 11-11.1 (County Job Development Authorities); N.D.C.C. ch. 15-69 (Centers of Excellence); N.D.C.C. ch. 40-57.4 (City Job Development Authorities); N.D.C.C. ch. 54-34.3 (Department of Commerce Division of Economic Development and Finance); N.D.C.C. ch. 54-60 (Department of Commerce); and N.D.C.C. ch. 54-60.1 (Business Incentives, Agreements, and Reports).  

[¶24] Chapter 11-11.1, N.D.C.C., authorizes a board of county commissioners to create, or discontinue, a job development authority by resolution.  N.D.C.C. § 11-

11.1-01.  The electors of a county may also discontinue an existing county job development authority.  
Id.
  The county may levy a tax for a job development authority fund.  N.D.C.C. § 11-11.1-04.  Section 11-11.1-03, N.D.C.C., authorizes a county job development authority “to use its financial and other resources to encourage and assist in the development of employment and promotion of tourism within the county,” including the power to gift, trade, or purchase and to hold, improve, and dispose of real and personal property, and to expend money raised by the tax authorized by the chapter for the purposes in the chapter.

[¶25] Chapter 15-69, N.D.C.C., authorizes a Centers of Excellence program with a Centers of Excellence Commission appointed by the State Board of Higher Education and the North Dakota Economic Development Foundation.  N.D.C.C. § 15-69-03.  Centers of Excellence programs are funded through a special fund in the state treasury appropriated to the Department of Commerce.  N.D.C.C. §§ 15-69-04 and 15-69-06.  Under those provisions, the Centers of Excellence Commission generally directs the Department of Commerce to disburse matching funds to a particular Center of Excellence for economic development under a process described in N.D.C.C. § 15-

69-05.  
See also 
 N.D.C.C. §§ 15-69-01(2) (defining center) and 15-69-04 (describing Centers of Excellence program).

[¶26] Section 40-57.4-01, N.D.C.C., authorizes the governing body of a city, by resolution, to create or discontinue a job development authority after notice and a public hearing.  The electors of a city also may discontinue an approved job development authority.  
Id.
  A city is authorized to levy a tax for a city job development authority fund.  N.D.C.C. § 40-57.4-04.  Section 40-57.4-03, N.D.C.C., authorizes a city job development authority to “use its financial and other resources to encourage and assist in the development of employment within the city,” including the power to “gift, trade, or purchase, and to hold, improve, and dispose of real and personal property,” and “to expend moneys raised by the tax for the purposes [of] this chapter.”  N.D.C.C. § 40-57.4-03(5) and (6).

[¶27] Chapter 54-34.3, N.D.C.C., authorizes a division of economic development and finance within the Department of Commerce to enhance the economic development of the state.  N.D.C.C. §§ 54-34.3-01 and 54-60-02(1)(b).  Section 54-

34.3-01, N.D.C.C., describes the mission of the division as promoting economic development in the state.  The director of the division is responsible for developing, implementing, and coordinating a comprehensive program for economic development consistent with the division’s mission.  N.D.C.C. § 54-34.3-04(3).  Chapter 54-60, N.D.C.C., describes the duties of the Department of Commerce, and N.D.C.C. § 54-

60-04 creates the Economic Development Foundation to develop a strategic plan for economic development in the state.   

[¶28] Chapter 54-60.1, N.D.C.C., outlines a procedure for the State or a political subdivision to provide business incentive disbursements to a business for a public purpose.  N.D.C.C. §§ 54-60.1-01(2) and 54-60.1-02.  The statutory provisions require a business incentive agreement with statutory guidelines and also include provisions for failure to meet goals.  N.D.C.C. §§ 54-60.1-03 and 54-60.1-04.  

[¶29] Hale argues N.D. Const. art X, § 18 only authorizes governmental entities to directly engage in business enterprises and claims the state statutes permit the governmental entities to gift public funds to private third parties under the guise of economic development.  He claims those procedures do not constitute directly engaging in a business enterprise.  

[¶30] We conclude, however, statutorily authorized economic development programs constitute an “enterprise” under the plain language of N.D. Const. art. X, § 18 because they constitute an authorized project or undertaking that is especially difficult, complicated, or risky, or constitute systematic purposeful activity within the meaning of that provision.  We reject Hale’s argument that N.D. Const. art X, § 18 only authorizes the governmental entities to directly engage in a business enterprise because that argument is inconsistent with the disjunctive word “or” in the phrase “engage in ‘any industry, enterprise, or business’” and with the ordinary meaning of enterprise.  
See
 
Haugland
, 2012 ND 123, ¶ 34.  The constitutional language does not require the governmental entity to “directly” engage in a business enterprise.  Rather, the language authorizes the governmental entity to engage in an enterprise, which, in view of the disjunctive use of industry, enterprise, or business and the plain meaning of enterprise, may include the implementation of a systematic purposeful program for economic development through third parties.  

[¶31] Our interpretation is consistent with Attorney General opinions holding that authorized economic development programs constitute an enterprise.  
See
 N.D. Op. Att’y Gen. 95-L-233 (October 11, 1995) (concluding city may engage in enterprise for economic development by creating job development authority or contracting with industrial development organization under N.D.C.C. ch. 40-57.4); N.D. Op. Att’y Gen. 93-L-129 (April 12, 1993) (concluding job development under N.D.C.C. ch. 11-

11.1 is enterprise permitting county to loan funds for public purpose).  Although not binding on courts, opinions of the Attorney General are entitled to deference if persuasive.  
Riemers v. City of Grand Forks
, 2006 ND 224, ¶ 11, 723 N.W.2d 518.  The Attorney General’s opinions are consistent with our interpretation of enterprise and are persuasive.  

[¶32] Because authorized economic development programs constitute an enterprise, N.D. Const. art. X, § 18 allows the governmental entities to make loans, extend credit or make donations while implementing those programs, but prohibits the entities from “‘otherwise’ loaning, giving its credit, or making donations to or in aid of any individual, association, or corporation.”  
Haugland
, 2012 ND 123, ¶ 33 (quoting 
Gripentrog
, 126 N.W.2d at 238 and citing 
Wentz
, 103 N.W.2d at 253-54).  We hold the statutes cited by Hale authorize the State entities, a county, and a city to implement programs for the purpose of economic development and satisfy the requirement for those entities to engage in an enterprise within the meaning of N.D. Const. art. X, § 18.  

[¶33] As in 
Haugland
, 2012 ND 123, ¶¶ 37-40, however, we also consider whether economic development constitutes a “public purpose” under the gift clause of the state constitution and the due process clause of the 14th Amendment of the United States Constitution.  In another context involving condemnation of private land for a purported public use, this Court recognized that economic welfare and stimulation of commercial growth satisfied the public use and purpose requirements for takings under N.D. Const. art. I, §16 and U.S. Const. amend. V.  
City of Jamestown v. Leevers Supermarkets, Inc.
, 552 N.W.2d 365, 369 (N.D. 1996).  After 
Leevers
, the citizens of North Dakota amended N.D. Const. art. I, § 16 in 2006 to provide that “[f]or purposes of this section, a public use or a public purpose does not include public benefits of economic development, including an increase in tax base, tax revenues, employment, or general economic health.”  2007 N.D. Sess. Laws ch. 578.  The plain language of that amendment adopted by the citizens of North Dakota suggests that for purposes of other provisions of the North Dakota constitution, economic development may be a public purpose.  

[¶34] The public purpose includes the promotion of prosperity and general welfare of all the inhabitants or residents within a given governmental entity.  
E.g.
, 
Gripentrog
, 126 N.W.2d at 237.  In 
Haugland
, we rejected an argument for a  narrower interpretation of public purpose that required urban renewal to benefit all the inhabitants of a city.  2012 ND 123, ¶ 38.  We said one of the purposes of urban renewal plans was to increase the tax base for property within the city’s territorial limits, and we declined to hold those benefits did not accrue to all the city’s inhabitants.  
Id.
  In another context, this Court has recognized the “primary object[ive] of all government is to provide for the welfare of its citizens.”  
Ferch v. Housing Auth.
, 59 N.W.2d 849, 857 (N.D. 1953) (holding statute authorizing low rent housing was constitutional).  In 
Gripentrog
, this Court recognized a public purpose was satisfied by the construction and leasing of a sugar beet processing plant to improve a municipality’s local economy.  126 N.W.2d at 232, 237.  
See also
 
Patterson v. City of Bismarck
, 212 N.W.2d 374, 388 (N.D. 1973) (stating that providing facilities within business district being reconstructed with rental and commercial enterprise is closely identified with the functions of a prosperous city).  An obvious goal of economic and job development programs is to increase the general economic health, welfare and prosperity of the people in a governmental entity.  We decline Hale’s invitation to conclude economic development does not satisfy the public purpose requirements of the gift clause of the state constitution and the due process clause of the 14th Amendment of the United States Constitution, and we hold authorized economic development programs satisfy the public purpose component of N.D. Const. art. X, § 18 and the due process clause of the 14th Amendment.

[¶35] We conclude the statutory provisions authorizing the State entities and the Minot defendants to implement economic and job development programs are an enterprise for a public purpose under 
Haugland
 and this Court’s precedent construing the current language of  N.D. Const. art. X, § 18.  As we explained in 
Haugland
, the “justice, wisdom, necessity, utility, and expediency of legislation are questions for legislative and not judicial determination, and we are concerned here only with the constitutionality” of those statutes.  2012 ND 123, ¶ 40.  We conclude the statutory provisions authorizing the State entities and the Minot defendants to engage in economic development are facially constitutional.  

B

[¶36] Hale also argues the economic development programs implemented by the State entities and the Minot defendants are unconstitutional as applied.  His complaint includes numerous allegations of disbursements of public money to businesses, persons, or associations, which were not for the reasonable support of the poor. 

[¶37] Because the implementation of economic development programs constitutes an enterprise for a public purpose, governmental entities engaged in that enterprise may extend credit, make loans, or make donations in furtherance of those programs.  To the extent Hale argues those disbursements must be for the reasonable support of the poor, his argument misconstrues the meaning of the gift clause.  

[¶38] Hale has not identified any disbursements that were not made under authorized economic development programs for a public purpose.  Unlike in 
Haugland
, Hale has not argued either the State entities or the Minot defendants failed to comply with any specific economic development statutes.  
See
 2012 ND 123, ¶¶ 46-64.  Rather, Hale generally argues the defendants’ economic development programs lack accountability, involve preferential treatment and violate the due process, the equal protection and the takings clauses of the state and the federal constitutions.  He claims he was entitled to a hearing to demonstrate his allegations.  Hale’s conclusory statements in his appellate brief do not cite any relevant evidence he may have provided at an evidentiary hearing.  His reliance on 
Leevers Supermarkets
, 552 N.W.2d at 374, for a hearing on public purpose is misplaced because that case involved whether a proposed taking of private property was for a public purpose under requirements for condemnation.  He cited no persuasive authority or argument to elevate his claims to a taking action or to support an equal protection claim.  

[¶39] Hale’s reliance on 
Teigen v. State
, 2008 ND 88, 749 N.W.2d 505, and 
State v. Blunt
, 2008 ND 135, 751 N.W.2d 692, also is misplaced.  
Teigen
, at ¶¶ 28-31, involved consideration for a contract, and 
Blunt
, at ¶¶ 21-25, involved a criminal prosecution for misapplication of entrusted property by a governmental employee.  Neither case involved arguments about whether economic development constitutes an enterprise for a public purpose.  Moreover, Hale’s arguments about accountability and preferential treatment have not cited violations of any specific statutory provisions.  In the absence of claims that specific disbursements were not made under an authorized enterprise for economic development and were not made for a public purpose, those issues may be resolved in the political process rather than in a lawsuit challenging the constitutionality of the statutes.

[¶40] “A party must do more than submit bare assertions to adequately raise constitutional issues.”  
Riemers
, 2004 ND 79, ¶ 6, 678 N.W.2d 547.  “‘[W]ithout supportive reasoning or citations to relevant authorities, an argument is without merit.’”  
Id.
 (quoting 
Kautzman
, 2003 ND 140, ¶ 15, 668 N.W.2d 59).  “We are not ferrets and we ‘will not consider an argument that is not adequately articulated, supported, and briefed.’”  
Holden
, 2007 ND 29, ¶ 7, 728 N.W.2d 312 (quoting 
Haibeck
, 2006 ND 100, ¶ 9, 714 N.W.2d 52).  Hale has not provided persuasive arguments showing the district court erred in deciding his constitutional challenge to the defendants’ economic development activities or to his equal protection and takings claims.  We conclude those arguments are without merit.

C

[¶41] It is unnecessary to consider any other claims made by Hale because they are either unnecessary to our decision or without merit.

IV

[¶42] We affirm the order.  

[¶43] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.